(No. 11575.—Decree affirmed.)

JOSEPH WHALEN *et al.* Plaintiffs in Error, *vs.* FRANK
SCHNEIDER, Defendant in Error.

*Opinion filed December 19, 1917.*

1. DEEDS—*when rule that purchaser must take notice of rights
of party in possession does not apply.* The rule that a purchaser is
bound to take notice of the rights of a person in the open possession
of the land conveyed does not apply where the grantor was, and
had been for thirty-five years, in equal possession with such person
as his housekeeper while he managed the land, doing nothing in-
consistent with the grantor's ownership, and where the grantor has
been the record owner for many years.

2. SAME—*when party is estopped to assert ownership of prop-
erty conveyed in deed.* A third party who is present when a deed
is executed and who at the same time conveys the adjoining land to
the same grantee is estopped to assert ownership of the land con-
veyed in the former deed where he witnessed the payment of the
consideration to the grantor and made no claim of any right or title
in the property; and such estoppel extends, after his death, to those
claiming under him.

WRIT OF ERROR to the Circuit Court of Edgar county;
the Hon. JOHN H. MARSHALL, Judge, presiding.

T. N. COFER, and C. M. HEINLEIN, for plaintiffs in
error.

WALTER S. LAMON, for defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Joseph Whalen and Timothy Whalen, and Joseph Wha-
len as administrator of the estate of Patrick Whalen, de-
ceased, filed their bill in chancery in the circuit court of
Edgar county against defendant in error, Frank Schneider,
and certain unknown owners, for the partition of a 10-acre
tract of land, being the northeast quarter of the northwest
quarter of the northwest quarter of section 35, in town-
ship 13, north, range 13, west of the second principal me-
ridian, in that county. Schneider answered the bill, alleg-

ing title in himself and setting up facts creating an estoppel against the complainants and Patrick Whalen, under whom they claimed. A replication was filed to the answer and the cause was tried before the court, which entered a decree finding the title in defendant in error and dismissing the bill for want of equity. This writ of error has been sued out by Joseph and Timothy Whalen to review that decree.

The bill charges that on November 14, 1870, Patrick Whalen, an uncle of plaintiffs in error, purchased the property in controversy from Thomas Smith and wife for $300, and entered into possession thereof and remained continuously in possession thereof until September 4, 1914; that in the deed conveying the property to him the grantee is described as "....... Whaland;" that on April 1, 1916, Patrick Whalen departed this life intestate, leaving him surviving a brother, William Whalen, his sole and only heir-at-law; that William Whalen conveyed said lands to plaintiffs in error as tenants in common, and that they are now each the owner of an undivided one-half interest therein in fee simple as such tenants in common. The bill further alleges that on August 22, 1879, Timothy Whalen executed a pretended deed of the property to Mary Bergen, which deed was recorded in the recorder's office of that county, but that Mary Bergen never went into possession of said lands but on September 4, 1914, attempted to convey the same to defendant in error by her deed of that date, which deed was duly recorded in the recorder's office of Edgar county; that defendant in error knew at that time that Patrick Whalen was the owner of said premises and that Mary Bergen had no right or authority to sell or convey the same, and that defendant in error on October 1, 1914, entered into possession of said premises and has continued in such possession ever since. The bill prays that the deed from Thomas Smith and wife to ....... Whaland may be reformed and amended and Patrick Whalen decreed to be the grantee therein; that the deeds from Timothy Whalen

to Mary Bergen, and from her to defendant in error, be canceled and removed as clouds on the title of plaintiffs in error; that they be decreed to be the owners of an equal undivided one-half interest in said premises as tenants in common and that partition thereof be made between them.

Defendant in error, Schneider, answered the bill, admitting the allegations as to the heirship and relationship of the parties but denying all the other material allegations of the bill. The answer alleged the deed from Thomas Smith and wife to ....... Whaland, which rendered the name of the person intended as grantee uncertain, was intended to convey the premises to Timothy Whalen; that said premises were, in fact, sold to him and the deed delivered to him, and that he entered into possession thereof and continued in such possession until he conveyed the same to Mary Bergen on August 22, 1879, which deed was duly recorded in the recorder's office of Edgar county on January 1, 1880; that on September 4, 1914, Mary Bergen conveyed said premises to defendant in error, and the deed to the same was duly recorded in the recorder's office of Edgar county on September 9, 1914, and that by virtue of such conveyance defendant in error is now the owner of said premises in fee simple. The answer further alleged that plaintiffs in error are estopped from alleging that Patrick Whalen was the owner of the premises or had any interest in the same, for the reason that when defendant in error entered into negotiations with Mary Bergen for the purchase of said land and contracted with her for the purchase of the same and paid to her $1000 as the purchase price of such premises Patrick Whalen was present in person during all such negotiations and until the deal was consummated and the deed executed, acknowledged and delivered to defendant in error and the purchase price paid, and made no claim of ownership of any kind to any part of said land; that at the same time said Patrick Whalen, and William Whalen, father of plaintiffs in error, contracted with defendant in error for the

sale to him of 4¼ acres of land owned by them adjoining the 10-acre tract in controversy, which tracts formed a single tract of land, without physical division between them, and executed, acknowledged and delivered to defendant in error their deed conveying to him such 4¼ acres; that there was nothing in the record of the title to said 10-acre tract, or the conduct and management thereof, different from the conduct and management of other lands owned by Mary Bergen, and that defendant in error was led to believe by the conduct of Patrick Whalen that said lands were owned by Mary Bergen. A general replication was filed to the answer and the cause tried before the court, as above stated.

The decree finds that the deed from Thomas Smith and wife to ....... Whaland was, in fact, a deed from them to Timothy Whalen and that by mistake the scrivener wrote the grantee's name "Whaland;" that Timothy Whalen took possession thereof and remained in possession until August 22, 1879, on which date he conveyed the lands by warranty deed to Mary Bergen, which deed was duly recorded on August 23, 1879, and that Mary Bergen thereafter remained in the ownership thereof until September 4, 1914, when she conveyed the same by warranty deed to defendant in error, Schneider, which deed was duly recorded on that date, and that defendant in error thereupon entered into possession of said premises and made valuable improvements thereon; that plaintiffs in error, who were in privity with Patrick Whalen, are estopped from alleging title in themselves, for the reason Patrick Whalen was present on September 4, 1914, when the defendant in error entered into negotiations with Mary Bergen and contracted with her for the purchase of said premises and she conveyed the same to him by warranty deed and he paid to her $1000 as the purchase price thereof, and stood by and witnessed all of said transactions and made no claim of ownership or interest of any character to any part of said lands; that at the same time defendant in error negotiated with Patrick and William Whalen

for the purchase of a tract of 4¼ acres which they owned and which was immediately adjacent to the 10-acre tract in controversy, said two tracts forming a single body of land, without physical division between them, and that there was nothing in the conduct of the parties or in the record of the title to indicate to defendant in error that the land he was purchasing from Mary Bergen was not her land, and that he was led to believe by the conduct of Patrick Whalen that said land was, in fact, her property. The decree orders that the bill be dismissed for want of equity.

The correctness of the decree depends upon the evidence, from which it appears that Timothy Whalen, father of Patrick Whalen and William Whalen, through whom plaintiffs in error claim title, was a cripple for the greater part of his life and unable to leave his chair. On May 31, 1855, he purchased from Cornelius Murphy and wife three-fourths of an acre in the northeast corner of the northeast quarter of section 34, in township 13, north, range 13, west, in Edgar county, on which he lived with his son Patrick Whalen, a brother, Patrick Whalen, and a niece, Mary Bergen, sometimes called Molly Bergen. Patrick Whalen the younger did the outside farm work and Mary Bergen took care of the household. In addition to the tract above mentioned Timothy Whalen acquired a tract of 11¾ acres in the east half of the northwest quarter of section 34, township 13, north, range 13, west, in Edgar county, from Joseph A. Brown and wife, by warranty deed dated March 30, 1858, and recorded April 25, 1876. He also acquired the east half of lot 27½ in Brown's addition to the town of Grandview, the last mentioned tract by purchase from Joseph Dunn and wife on July 8, 1857, and another tract of 30 acres in the west half of the northwest quarter of section 35, in said township 13, by warranty deed from Thomas Smith and wife dated April 25, 1859, and recorded April 25, 1876. This tract was crossed by a public highway from east to west, 25¾ acres being south of the highway and 4¼ acres

281 — 36

north of the road and fenced in with the 10-acre tract in controversy. The deed from Thomas Smith and wife in which the grantee is described as "Whaland" is dated November 14, 1870, and was filed for record April 25, 1876. It further appears the 10-acre tract in controversy, together with the other lands above mentioned, was assessed in the name of Timothy Whalen for the years 1872, 1874 to 1876, inclusive, and 1879. Timothy Whalen died on December 14, 1880, and thereafter the taxes appear to have been paid by Patrick Whalen and tax receipts were issued to him for such payments. It further appears that on May 7, 1877, Patrick Whalen conveyed to Molly Bergen the west half of lot 27½ in Brown's addition to the town of Grandview, which deed was duly recorded on May 8, 1877; that on March 6, 1877, Patrick Whalen mortgaged to Bridget Bergen, Mary Bergen and Margaret Bergen the 10-acre tract in controversy to secure the payment of a note for the principal sum of $900, dated March 1, 1877, due one year after date, with interest at the rate of ten per cent from date until paid, which mortgage was duly filed for record and recorded on March 7, 1877. There is nothing in the record to show whether the Patrick Whalen mentioned in this deed and mortgage was Patrick Whalen, Sr., brother of Timothy Whalen, or his son, Patrick Whalen, or the payment or release of this mortgage, or where Patrick Whalen obtained title to the land mortgaged, except the testimony of Joseph Whalen that Patrick Whalen the younger paid for the 10-acres. It further appears that on August 22, 1879, Timothy Whalen, by warranty deed of that date, conveyed to Mary Bergen the three-fourths of an acre on which they lived in section 34, the east half of lot 27½ in Brown's addition to the town of Grandview, the 11¾-acre tract and the 10-acre tract in controversy, which deed was duly acknowledged before Allan K. Mosely on the day of its date and recorded on August 23, 1879. On September 4, 1914, Patrick and William Whalen conveyed to defendant in er-

ror the tract containing 4½ acres situated in the west half of the northwest quarter of section 35, in township 13, being that part of the 30-acre tract formerly owned by Timothy Whalen lying north of the public highway, and on the same day Mary Bergen conveyed to defendant in error the 10-acre tract in controversy, which deed was recorded on September 9, 1914. Both the deed from Patrick and William Whalen to defendant in error and the deed from Mary Bergen to him were acknowledged before Allan K. Mosely, a notary public, on September 4, 1914.

The negotiations for the purchase and sale of the property in controversy were had between Patrick Whalen and C. C. Clapp, who became the purchaser of all of that part of the 30-acre tract formerly owned by Timothy Whalen lying south of the public highway. The first negotiations were had in July, 1914, at which time Patrick Whalen informed Clapp he could not sell it as he did not know what his brother would do and the deed was in his father's name. Some time after that Patrick Whalen told Clapp he was ready to sell the land and asked how much he would give for the whole 40 acres, also stating he had an offer for the land and that he wanted to know if Clapp would take it, and Clapp agreed to take the land if he would give him a good deed. At that time Patrick further said his brother would have to sign the deed for part of it and Miss Bergen would give a deed for the 10 acres. Clapp thereupon made arrangements with defendant in error by which he would take the 14¼ acres north of the highway, being the 10-acre tract in controversy and the 4¼ acres of the 30-acre tract north of the highway and adjoining the 10-acre tract on the south. Pursuant to this arrangement the parties met at the home of Patrick Whalen and Molly Bergen on September 4, 1914. There were present at that time Patrick and William Whalen, Molly Bergen, one of William Whalen's sons, Ed Whalen, defendant in error, Schneider, Clapp, A. K. Mosely, the notary public, and two other young men.

About an hour was consumed in closing the deal. Deeds were prepared in the presence of these parties by Mosely, by which Patrick and William Whalen conveyed the 25¾ acres south of the public highway to Clapp and the 4¼ acres north of the highway to Schneider, and Molly Bergen conveyed to Schneider the 10-acre tract in controversy. The deeds were signed and acknowledged by the grantors before Mosely as notary public, the consideration was paid to the respective parties in the presence of each other, and the deeds were delivered to the respective grantees. Clapp paid to Patrick and William Whalen $3000 for the land sold by them, and defendant in error paid to Molly Bergen $1000 for the 10 acres of land conveyed by her. Thereafter the grantees entered into possession of the respective tracts of land, and, so far as the evidence shows, defendant in error has continued in the open and adverse possession of the land in controversy ever since. He subsequently paid Clapp for the 4¼ acres north of the highway. Nothing occurred at the time the deeds were made and executed to indicate that anyone other than Molly Bergen had or claimed to have any right or interest in the 10-acre tract in controversy.

Plaintiffs in error insist that since Patrick Whalen was in ostensible possession of the property, defendant in error is charged with notice of whatever claim of right or title he might have had to the property. While it is true, as a general proposition, that a purchaser is bound to take notice of the rights of a person in the open, visible possession of land and is chargeable with notice of everything to which an inquiry might have led, (*German-American Bank* v. *Martin,* 277 Ill. 629,) we think that rule has no application to a case such as the one at bar, where the situation and relationship of the parties were as here shown. Mary Bergen was the owner of the property of record and had been for more than thirty-five years. She and Patrick Whalen were living together as members of the same family, Mary Bergen taking care of the household and Patrick Whalen man-

aging the land. He paid the taxes, pastured the land, drove the horses and cows from the home place to the land, repaired the .fences and cut wood thereon. All such acts of possession were consistent with the use of said land for the family as constituted and were not inconsistent with the ownership of Mary Bergen under the circumstances. Nor is there any evidence in the record which even tends to show that had defendant in error made the most diligent inquiry he would have been apprised of the claim of title now asserted by plaintiffs in error. So far as the evidence shows, Patrick Whalen in his lifetime made no claim of ownership to the property now in controversy. When approached by Clapp with a view of purchasing the property he informed him, in effect, that Mary Bergen was the owner of this tract and would execute the deed to it. He was present at the time the deed was executed and knew what was being done, and himself joined in making a deed to defendant in error of the $4\frac{1}{4}$ acres adjoining the land on the south. He saw the consideration for the land in controversy paid to her, and made no claim of any right or title in the property. Under such circumstances Patrick Whalen would be estopped from asserting that he was the real owner of the property. The rule is as stated in Tenth Ruling Case Law, (sec. 95, p. 780,) as follows: "It has been held in many cases that if the owner of land knowingly stands by and permits his property to be mortgaged or sold by another to one who is to the owner's knowledge relying on the apparent ownership of the person executing the conveyance, such conduct, irrespective of who benefits by the transaction, will estop the owner from asserting his title against the mortgagee or grantee." In section 96 it is further said: "A strong case of estoppel is made out when by conduct or representation an owner encourages another to believe that a third person is the owner of the land, and thereby induces him to purchase or take a mortgage on the property or to credit or otherwise favor such third person

on the strength of such supposed ownership." Numerous cases are cited in support of the text. Such, as we have seen, is substantially the situation presented here.

As to the further contention that Patrick Whalen was the grantee in the deed from Thomas Smith and wife, while it is true that the deed was so drawn as to leave it uncertain as to who was intended to be the grantee in such deed, we think, in view of the situation and relationship of the parties and the situation of the land, the finding in the decree that Timothy Whalen was the grantee was correct. So far as the evidence shows he was the owner of the land immediately adjoining, which was being farmed and cultivated by members of his family,—a most likely purchaser of it,—and he seems to have been the only one of them with sufficient means to have purchased the real estate in question; and such seems to have been the general understanding in that community, as up until the time of his death the land was assessed for taxes in his name.

For thirty-five years Patrick Whalen lived with Mary Bergen as a member of the same household, in the immediate vicinity of the land, and took no steps whatever to have the deed from Thomas Smith and wife reformed or the deed from Timothy Whalen to Mary Bergen set aside as a cloud on his title. He informed the prospective purchaser of this property that Miss Bergen would have to make the deed to it, was present and saw her execute the deed pursuant to this representation made by him, saw the purchase money paid to her and made no claim whatever to any interest in the property or the purchase money received therefrom, and after Mary Bergen's death, when shown a certificate of deposit for $1000 found among her belongings, stated that it was the money she got from the sale of the land. This shows quite conclusively that he understood Mary Bergen was the owner of the land in controversy.

The evidence offered on the part of plaintiffs in error of the possession and pasturing of the land by Patrick Wha-

len, the testimony of Joseph Whalen that he saw Patrick Whalen pay Thomas Smith $300 for the land, the tax receipts showing the payment of the taxes on this land by Patrick Whalen after the death of Timothy Whalen, and the making of the mortgage on March 6, 1877, by Patrick Whalen, while worthy of consideration is not sufficient to overcome the case made by the declarations and course of conduct of Patrick Whalen showing that he made no claim to the property. The testimony of Joseph Whalen as to the payment of the purchase price is of very little value. At the time of the transaction with respect to which he testified he was a boy eight years of age, and could hardly be expected to know or comprehend a transaction of this character and remember its details after so many years. All he is able to testify to is the payment of the money, ($300,) which might be true and yet the money paid be that of Timothy Whalen and he, in fact, the purchaser of the land. The giving of a mortgage by Patrick Whalen to Mary Bergen and others throws no light on the situation. There is nothing in the record to show by which Patrick Whalen,— whether the brother of Timothy Whalen or the son,—the mortgage was made, and in any event the making of a mortgage by a Patrick Whalen would not necessarily show that he was the owner of such property. The evidence of the payment of taxes on this property by Patrick Whalen after the death of Timothy Whalen is overcome by the showing that during the lifetime of Timothy Whalen the lands were assessed in his name for taxes.

Upon a consideration of the whole record we are of the opinion that the decree of the lower court is right and should be affirmed.                    *Decree affirmed.*