**AVCO DELTA CORPORATION CANADA LIMITED, Plaintiff,**

**v.**

**UNITED STATES of America, Canadian Parkhill Pipe Stringing, Inc., d/b/a Parkhill Pipeline, Inc., Canadian Parkhill Pipe Stringing, Ltd., and Canadian Parkhill Construction Equipment, Ltd., Defendants.**

**No. P–3161.**

United States District Court,
S. D. Illinois, N. D.

Jan. 13, 1971.

F. Louis Behrends and John Dolan, Peoria, Ill., George L. Saunders, Jr., Chicago, Ill., for plaintiff.

Frank O. Wetmore II, Chicago, Ill., Eugene L. White, Max J. Lipkin, Asst. U. S. Atty., Peoria, Ill., Jack B. Teplitz, Tax Division, Dept. of Justice, Washington, D. C., for defendants.

### DECISION AND ORDER ON PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

ROBERT D. MORGAN, District Judge.

The complaint herein seeks to have plaintiff's alleged security interest in the proceeds of certain equipment held to be a superior lien to that of the United States Government for taxes. After answers by all defendants, plaintiff has moved for entry of judgment on the pleadings.

Jurisdiction is founded in 26 U.S.C. § 7426, 28 U.S.C. § 1346(e), 2410 and 2463, and venue here is asserted under 28 U.S.C. § 1402(c). There is no dispute with respect to either jurisdiction or venue.

The motion is supported by affidavits and sworn documents. A written agreement by all parties to this action, containing comprehensive recitals, and other undisputed documents are attached to the complaint. The Government's opposition to said motion is also supported by affidavits and sworn documents. It is clear, therefore, under Rule 12(c) F. R.C.P., that the motion must be treated as one for summary judgment and be disposed of as provided in Rule 56 F.R. C.P. All parties have been given reasonable opportunity to present any material deemed pertinent;[1] and the question thus becomes whether there is any genuine issue as to any material fact requiring trial or whether judgment should be entered as a matter of law.

The following sets of facts are clear and undisputed:

1. Plaintiff loaned $600,000 in cash to Canadian Parkhill Construction Equipment, Ltd. (herein CONSTRUCTION) on November 13, 1969, taking a note and chattel mortgage on 29 pieces of heavy construction equipment which plaintiff believed in good faith to be owned by the borrower, which mortgage, to the extent necessary and with other documents, was promptly filed and recorded so as to perfect any security title obtained thereby and giving requisite public notice thereof in the jurisdictions here pertinent. The two other "Canadian" corporate defendants, Canadian Parkhill Pipe Stringing, Inc. (herein INC.), for whose tax liability the United States asserts its lien, and Canadian Parkhill Pipe Stringing, Ltd. (herein LTD.), of which CONSTRUCTION and INC. are both wholly owned subsidiaries, had

---

1. Since filing the motion under consideration, a Third Party Complaint has been filed, with leave of court, by the Canadian Parkhill defendants. It seems apparent from the allegations thereof that such third-party defendants, when hereafter before the court, will not be properly interested in the question here decided.

knowledge of and guaranteed the loan in writing.

2. On February 16, 1970, notices of seizure were issued by the Internal Revenue Service on behalf of the United States, and served on INC., covering, among many other things, the 29 pieces of equipment involved in the mortgage to plaintiff which were in the possession of INC. under lease for business use. This followed proper notices of lien by the United States Government for federal taxes and required withholdings alleged to be due and unpaid from INC. in the amount of $793,416.73.

3. CONSTRUCTION defaulted on its loan payments due after the one for December, 1969, and on April 20, 1970 a formal demand for full payment was served on it by plaintiff.

4. On May 26, 1970, after failure to agree on the ownership of the property involved or the priority of the respective asserted liens, all present parties to this action agreed, in writing, upon an auction sale of the equipment, with an escrow of the proceeds (less fees and expenses) without prejudice to existing or future claims thereto. Such sale was held on July 16, 1970, and the Northern Trust Company of Chicago, Illinois now holds over one million dollars in trust, under said escrow agreemnt, subject to determination of the respective rights therein or thereto in an action such as this, if not by future agreement between the parties.

Apparently the gross sale price of the equipment listed in plaintiff's mortgage was $603,744; but the record does not fully disclose the total costs of sale and escrow, of which plaintiff should bear some proportionate part even if its security title is upheld.

Plaintiff, by its motion, asks judgment against the escrow fund for $603,744. Defendants LTD., INC., and CONSTRUCTION take the position that such judgment for plaintiff should be granted promptly to stop the accumulation of interest on the acknowledged obligation of CONSTRUCTION to plaintiff, on which LTD. and INC. are guarantors; but these defendants concede that there should be withheld "such amount as the court may deem appropriate as a proportionate charge against said proceeds on account of the costs and expenses of the auction sale." The United States Government opposes the motion, contending that there are material issues of fact which require trial. The Government agrees, however, that the sole question presented to the court by this motion is whether there is any such material issue. See Rule 56(c) F. R.C.P., and June v. George C. Peterson Co., 155 F.2d 963 (7th Cir. 1946).

Based on its affidavits and documentation on file, the Government contends that plaintiff cannot have obtained any security title to the equipment through its mortgage which CONSTRUCTION executed, because "all or almost all of the above-mentioned equipment seized by the Internal Revenue Service was *owned by* Taxpayer * * * (INC. not CONSTRUCTION)" (Emphasis added); that INC. paid the purchase price for 28 out of the 29 units listed in plaintiff's mortgage; that INC. charged the purchase cost thereof to business expense on its tax returns; and that in November, 1968, INC. received a Bill of Sale from the original seller of 12 units of the equipment listed in plaintiff's mortgage. This latter document was some eight months after INC. appears from the records to have conveyed same to its parent, LTD., but also eight months before it was listed as property of CONSTRUCTION in plaintiff's mortgage.[2]

---

2. The Government also asserts that, "As to this very same equipment Touche Ross & Co. in its letter of November 7, 1969 would not express an opinion as to whether Parent (LTD.), Taxpayer (INC.) or CONSTRUCTION owned this equipment, but rather confined its letter to apply collectively to all three corporations." This is not quite accurate. That letter, received by plaintiff as part of its title and credit investigation prior to the loan, recited that the writer firm was 1969 auditor of the three Canadian Parkhill companies, that its audits were incomplete,

Upon analysis, the issue before the court is quite simple. The Government's position is that INC. (Taxpayer) owned most of the equipment, that CONSTRUCTION did not own it, and, hence, that, with no title, CONSTRUCTION could not possibly have made a valid mortgage of it; or that, at the very least, there are disputed questions of fact bearing on CONSTRUCTION'S title at the time of the mortgage which must be material to the validity of the mortgage, likewise because, without clear title to be mortgaged, the mortgage could convey no security interest. Plaintiff's whole position on this point is that even if it be conceded for the sake of argument that there are disputed questions of fact bearing on the technical validity of CONSTRUCTION'S title, they are completely *immaterial* to the validity of the mortgage and the superiority of plaintiff's lien as a matter of law, because, on the other facts which are before the court and not disputed, plaintiff is shown to be a mortgagee for value in good faith, not subject as a matter of law to such of the mortgagor's possible title defects as might be shown, particularly where, as here, the alleged real owner (INC.) knew of the mortgage and did not assert its title but actually guaranteed the loan. Careful consideration leads this court to the conclusion that the plaintiff is correct, as a matter of established law, and that its motion should be granted.

It is clear that any security interest in equipment that plaintiff acquired attached in November, 1969. Such interest was superior in time to any lien of the Government under Section 6323 of the Internal Revenue Code. The Government's notices of lien were filed in February, 1970. See 26 U.S.C. § 6323(a) and Paramount Finance Co. v. United States, 379 F.2d 543 (6th Cir. 1967). As shown by affidavit of J. A. McAuliffe on file, prior to making its substantial loan to CONSTRUCTION,

involved here, plaintiff, which had successfully loaned money on equipment three times previously to various of the Parkhill companies, checked their financial standing directly and with third parties, required exhibition of documents purporting to show conveyance of title to the equipment to CONSTRUCTION, as well as certification from successive Parkhill auditing firms as to what the books showed in this regard. These documents, including corporate minutes, fully confirmed an apparent title in CONSTRUCTION, at least as between it and its parent (LTD.) and sister corporation (INC.). Without registered equipment titles of some kind (and there is no contention that such existed here), it is difficult to see what more plaintiff reasonably could have done to assure the title of its mortgagor. It seems perfectly clear that neither LTD. nor INC. could question such title. They have not done so here and they are both guarantors of the loan which the mortgage was given to secure.

All the inter-corporate accounting among the Parkhill companies for this equipment does not appear, and it may well be that INC. has made improper deductions on its United States tax returns. It can hardly be argued that plaintiff is responsible for that, or that plaintiff was bound to verify proper accounting any more than it did through the independent Parkhill auditors on a loan of which all three Parkhill companies had full knowledge.

■■ It is clear that state law prevails as to such title questions, (Aquilino v. United States, 363 U.S. 509, 80 S. Ct. 1277, 4 L.Ed.2d 1365), and that under the law of Illinois a mortgagee for value in good faith prevails even over creditors who were defrauded by conveyance to the mortgagor. Kranert v. Simon, 65 Ill. 344 (1872), and DeMartini v. DeMartini, 385 Ill. 128, 52 N.E.2d 138 (1944). The Government says it does

but that with respect to 14 listed equipment units, it had seen "copies of minutes and bills of sale which in effect transfer

title for each of the above pieces of equipment to Canadian Parkhill Construction Equipment, Limited."

not argue fraudulent conveyance to CONSTRUCTION, and, hence, that cases on mortgagees for value in good faith of property fraudulently conveyed are not in point. However, the Government can hardly be in a better position here, vis-a-vis plaintiff, if its position of no conveyance by INC. is taken as true, than it would be if INC. had conveyed its equipment to avoid the taxes. In that case, as shown by United States v. Fidelity & Deposit Co., 214 F.2d 565 (5th Cir. 1954), cited with approval in Zeddies v. United States, 357 F.2d 897 (7th Cir. 1966), the mortgagee for value in good faith prevailed over the tax claim. Here the participation by INC., in representations that CONSTRUCTION owned and had a right to mortgage the property, is the full equivalent of a conveyance of unregistered personal property. Neither the so-called "real owner" nor his creditors in such a situation can be permitted to prevail over one who has given real value in good faith reliance on the implicit representations with respect to the security.

A homely example, involving less money, may illuminate the principle of law this court believes to be applicable here. It may be said quite generally, and with assurance, that a man is powerless to make a valid mortgage of a refrigerator his brother actually owns; but if the brother is present at the making of the mortgage loan and represents to the lender that the borrower is the owner, neither the brother nor any of his creditors (except such as may have actual prior perfected liens) may be heard to say that the borrower didn't own it so far as that mortgage is concerned.

In the opinion of this court, it would be grossly unjust, under settled law and the undisputed circumstances here, to allow the United States tax liens to precede or to defeat the lien of plaintiff's mortgage, even if there are disputed questions of fact bearing on the question of the title of CONSTRUCTION to some or all of the equipment listed in the mortgage.

Accordingly, IT IS ORDERED that plaintiff's motion for judgment on the pleadings be and the same is hereby ALLOWED, and it is ADJUDGED that plaintiff's chattel mortgage is a prior and superior lien on the escrow fund to the lien of the Internal Revenue Service of the Treasury Department of the United States Government for taxes due from INC. Judgment directing payment of a specific sum by the escrow agent will be entered upon presentation of a petition therefor, which makes an adequate showing of compliance with the escrow agreement and acceptance of an equitable share of sale and escrow expenses with means of assuring payment thereof.