**AVCO DELTA CORPORATION CANADA LIMITED, Plaintiff-Appellee,**

**v.**

**UNITED STATES of America, Defendant-Appellant,**
**and**
**Canadian Parkhill Pipe Stringing, Inc., et al., Defendants-Appellees.**

**No. 71-1321.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 17, 1972.

Decided April 18, 1972.

Scott P. Crampton, Asst. Atty. Gen., Tax Div., Meyer Rothwacks, Chief, Appellate Section, U. S. Dept. of Justice, Washington, D. C., Donald B. Mackay, U. S. Atty., Springfield, Ill., Johnnie M. Walters, Asst. Atty. Gen., Crombie J. D. Garrett, Stephen Schwarz, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Frank O. Wetmore, II, Edward J. Wendrow, George L. Saunders, Jr., Mark E. MacDonald, Theodore M. Miller, Chicago, Ill., Eugene L. White, Peoria, Ill., for plaintiffs-appellees; Winston, Strawn, Smith & Patterson, Sidley & Austin, Chicago, Ill., Kavanagh, Scully, Sudow, White & Frederick, Peoria, Ill., of counsel.

Before DUFFY, Senior Circuit Judge, SPRECHER, Circuit Judge, and ESCHBACH, District Judge.*

SPRECHER, Circuit Judge.

What is the priority between a perfected tax lien and an earlier perfected chattel mortgage lien upon property not owned by the chattel mortgage debtor but owned by the taxpayer who had represented to the creditor that the debtor owned the property?

Three affiliated Parkhill corporations are involved: The parent corporation is Canadian Parkhill Pipe Stringing Ltd. ("Ltd."), which is the sole shareholder of the taxpayer, Canadian Parkhill Pipe Stringing, Inc., d/b/a Parkhill Pipeline, Inc. ("taxpayer"), and of the chattel mortgage debtor, Canadian Parkhill Construction Equipment, Ltd. ("Construction").

Avco Delta Corporation Canada Limited ("Avco"), which was in the business of financing the purchase and rental of construction equipment, loaned $600,000 in cash to Construction on November 13, 1969. Avco took a note for $674,301.32 and a chattel mortgage on 29 pieces of heavy construction equipment. In the chattel mortgage executed by Construction, the mortgagor expressly covenanted that it owned the mortgaged equipment. The equipment was allegedly leased by Construction to taxpayer for use on a pipe laying job in Bureau County, Illinois. Avco filed a financing statement, listing the 29 pieces of equipment, with the recorder of Bureau County, Illinois, where the equipment was located, on November 25, 1969, and with the Secretary of State of Illinois, on December 5, 1969. The financing statement listed Construction as debtor.

As part of the consideration for making the $600,000 loan to Construction, Avco received a "Guarantee and Indemnity" executed on October 23, 1969, by Ltd. and taxpayer, wherein they agreed to guarantee payment as principal debtors of debts and liabilities of Construction to Avco and to indemnify and save Avco harmless from all liabilities and claims arising as a consequence of Avco's dealing with Construction.

Avco received from Construction the first two installments on the loan on December 1 and 17, 1969, but on December 30, 1969, Construction communicated to Avco its inability to make further payments.

The government's tax claim is based upon withholding and F.I.C.A. taxes assessed against taxpayer for the third and fourth quarters of 1969 in the amount of $792,125.06. The assessment was made on February 6, 1970, and notices of liens were filed on February 9, 1970, with the Secretary of State of New York, where taxpayer was incorporated, and on February 16, 1970, with the recorder of Bureau County, Illinois.

* District Judge Jesse E. Eschbach of the Northern District of Indiana is sitting by designation.

On February 16, 1970, pursuant to a notice of seizure issued on that date, the Internal Revenue Service seized property located at Princeton, Bureau County, Illinois, including the 29 pieces of equipment listed in the Avco chattel mortgage and financing statement.

On April 20, 1970, Avco served Construction with formal demand for payment of the loan.

On May 26, 1970, after Avco and the government were unable to agree on the ownership of the 29 pieces of equipment or on the priorities of their respective liens, the three Parkhill companies, Avco and the Internal Revenue Service executed an agreement whereby property, including the disputed 29 pieces, was sold at auction on July 16, 1970. The proceeds of the sale, including $603,744 allocable to the 29 items, were deposited in escrow pending the determination of the rights of Avco and the government.

This action was filed in the district court on July 16, 1970, by Avco against the three Parkhill companies and the United States. Avco asked that its lien be adjudged a first lien on proceeds allocable to the 29 items.

After answers were filed by all defendants, Avco moved for entry of judgment on the pleadings supported by the affidavits of Avco and Parkhill officers. The three Parkhill companies consented to and prayed for the entry of summary judgment in favor of Avco. The United States opposed the motions and filed the affidavits of two revenue agents, who raised questions as to whether Construction or taxpayer owned the 29 items covered by Avco's chattel mortgage.

The district court allowed Avco's motion for judgment on the pleadings, holding that Avco's "chattel mortgage is a prior and superior lien on the escrow fund to the lien of the Internal Revenue Service of the Treasury Department of the United States Government for taxes due from [taxpayer]." 321 F.Supp. 241, 245 (S.D.Ill.1971).

In the absence of any dispute regarding Construction's ownership of the 29 pieces of mortgaged equipment, Avco's lien would prevail over the government's tax lien. The lien created by 26 U.S.C. § 6321 is not valid as against the holder of a security interest until filed in the designated office in the state or county in which the property is located. 26 U.S.C. § 6323. The government filing in Bureau County, Illinois, occurred on February 16, 1970, whereas Avco had perfected its security interest under Illinois law by filing its financing statement in Bureau County on November 25, 1969. Ill.Rev.Stat. ch. 26, § 9–302 (1963). Under the codified common-law rule of "the first in time is the first in right," a choate state-created lien takes priority over later federal tax liens. United States v. Pioneer American Ins. Co., 374 U.S. 84, 87–88, 83 S.Ct. 1651, 1654, 10 L.Ed.2d 770 (1963). A state-created lien is choate "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." United States v. New Britain, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954). The Avco financing statement showed Construction as the lienor, described the 29 items of equipment and established the amount secured.

However, the two affidavits filed on behalf of the government showed that taxpayer rather than Construction paid virtually the entire purchase price for the 29 items, that taxpayer received the bill of sale from the original seller for 12 of the items and that the items had been expensed on taxpayer's books and tax returns.

The affidavits filed on behalf of Avco showed that Avco had previously loaned money to the Parkhill companies on three occasions; each time the loans were prepaid before they matured prior to the $600,000 loan. Avco made its customary investigation of the financial standing of the three Parkhill companies, including an examination of the most recent interim accounts and consolidated financial statement prepared by certified accountants, supplemented by Dun & Bradstreet reports and inquiries

at Construction's bank. Thereafter Construction furnished to Avco corporate resolutions authorizing the sale of the pieces of equipment from Ltd. to Construction and a copy of a bill of sale showing title to the equipment in Construction. The affidavits also stated that Avco received letters from the accounting firms of Buckley, McCarney, Swinarton & Company, stating that the equipment was included in the assets of Construction, and Touche Ross & Co., enclosing copies of invoices and bills of sale. Avco received the written guarantees of the loan from both taxpayer and Ltd. and certified copies of resolutions by the boards of directors of each company authorizing the guarantee. Prior to recording the notes and chattel mortgage in Toronto, Ontario, Canada, and the financing statement in Bureau County and with the Secretary of State of Illinois, a check was made of each of the respective recording offices which disclosed that there were no outstanding security interests in any of the pieces of equipment. The government affidavits did not contradict the facts set forth in Avco's affidavits outlining the steps which Avco took prior to consummating the loan.

The government contended that its affidavits introduced "factual uncertainty relating to the ownership of the construction equipment" sufficient to preclude the district court's summary disposition.

■ The district court, however, took the position that the disputed ownership was immaterial since Avco obtained its security interest in equipment which it "believed in good faith to be owned by the borrower." The court said, "Neither the so-called 'real owner' nor his creditors in such a situation can be permitted to prevail over one who has given real value in good faith reliance on the implicit representations with respect to

the security." 321 F.Supp. 241, 242, 245. The district court properly looked to Illinois law to determine whether Avco had indeed perfected its security interest in the 29 items of equipment despite the questions of ownership raised by the government in the district court.

■ Inasmuch as section 6321 "creates no property rights but merely attaches consequences, federally defined, to rights created under state law," United States v. Bess, 357 U.S. 51, 55, 78 S. Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958), a federal court must look to state law to determine the nature of the legal interest which the taxpayer had in the property sought to be reached. Aquilino v. United States, 363 U.S. 509, 512–513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

Illinois adopted the Uniform Commercial Code in 1961. Section 9–204 provides in part, "A security interest cannot attach until there is agreement . . . that it attach and value is given and the debtor has rights in the collateral." Ill.Rev.Stat. ch. 26, § 9–204 (1963). Here there was an agreement that the security interest attach and value was given. The crucial question is whether the debtor had "rights" in the collateral. The code does not define the word "rights" except to indicate that it "includes remedies." Ill.Rev.Stat. ch. 26, § 1–201(36) (1963).

Section 1–103 provides in part, "Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to . . . estoppel, fraud, misrepresentation, . . . or other validating or invalidating cause shall supplement its provisions."[1] Ill. Rev.Stat. ch. 26, § 1–103 (1963).

■ It is clear under Illinois law that some "title" or "rights" can be created by estoppel. An Illinois court expressed the concept in Mori v. Chicago Nat'l

---

1. "The Code could have usurped the whole field of law as to commercial transactions, but it does not purport to do so." Theo.

Hamm Brewing Co. v. First Trust & Savings Bank, 103 Ill.App.2d 190, 194, 242 N.E.2d 911, 914 (1968).

Bank, 3 Ill.App.2d 49, 51, 120 N.E.2d 567, 568 (1954):

> "Whatever title the defendant has must rest on the doctrine of estoppel. This is an equitable doctrine taken over by the law. It is based upon the conduct of the true owner, whereby he has allowed another to appear as the owner, or as having full power of disposition over the property, so that an innocent person is led into dealing with such apparent owner."

The Illinois Supreme Court early stated the principle in Anderson v. Armstead, 69 Ill. 452, 454–455 (1873):

> "The law is familiar, that where the owner of property holds out another, or allows him to appear, as the owner of, or as having full power of disposition over the property, and innocent parties are thus led into dealing with such apparent owner, or person having the apparent power of disposition, they will be protected. Their rights, in such cases, do not depend upon the actual title or authority of the party with whom they have directly dealt, but they are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power he caused or allowed to appear to be vested in the party, upon the faith of whose title, or power, they dealt."

See also Drain v. La Grange State Bank, 303 Ill. 330, 335, 135 N.E. 780, 782 (1922); Whalen v. Schneider, 281 Ill. 557, 565–566, 118 N.E. 41, 44 (1917); National Bond & Investment Co. v. Shirra, 255 Ill.App. 415 (1930).

 It appears established under Illinois law that Construction had some "rights in the collateral" arising through the acquiescence in and guarantee of its arrangement with Avco by taxpayer and Ltd., which created an estoppel.[2] Whether the estoppel was express or implied makes no difference.[3]

The government then asked "why, merely because the three Parkhill companies represented to Avco that Construction owned the mortgaged property (and are thus estopped from later denying that fact), a creditor of the true owner is also necessarily estopped to question the actual ownership of the property?"

 In matters of substance, the government's lien does not exceed the rights of the taxpayer. Equitable Life Assurance Society of United States v. United States, 331 F.2d 29, 33 (1st Cir. 1964); United States v. Winnett, 165 F.2d 149, 151 (9th Cir. 1947). In other words, the rights of the government rise no higher than those of the taxpayer whose property is sought to be levied on. Karno-Smith Co. v. Maloney, 112 F.2d 690, 692 (3rd Cir. 1940).

 Although some states apparently hold that creditors of the estopped party are not likewise estopped as a matter of state law, Illinois holds otherwise. Cross v. Weare Commission Co., 153 Ill. 499, 38 N.E. 1038 (1894); Thomas v. Citizens' Horse Ry. Co., 104 Ill. 462 (1882); Reynolds v. Patterson, 4 Ill.App. 183 (1879).[4] Thus Construc-

---

2. This conclusion obviates the necessity of determining whether the affidavits on file were sufficient to give Construction some colorable title or rights other than those created by estoppel.

3. Illinois permits estoppel to arise from silence as well as from words. "Thus, where one with a duty to speak remains silent and such silence would operate to the injury of another, an estoppel will arise in favor of the party who otherwise would be injured. Moreover, one whose silence has induced or encouraged an act

infringing upon his rights cannot subsequently complain of such infringement." 18 Illinois Law and Practice, Estoppel, § 32. See also Jurek v. Smuczynski, 61 Ill.App.2d 426, 433, 209 N.E.2d 850, 853 (1965).

4. The guarantees of taxpayer and Ltd. could also be construed as a part of the security agreement, which, under Illinois law, "is effective according to its terms between the parties, against purchasers of the collateral and against creditors." Ill. Rev.Stat. ch. 26, § 9–201 (1963).

tion's title to or rights in the collateral created by taxpayer's estoppel would, in Illinois, apply as against taxpayer's creditors such as the government.

The government next contended that, even if Ltd. and taxpayer may be classified as "debtors" (see Ill.Rev.Stat. ch. 26, § 9–105(1) (d) (1963) ) with "rights in the collateral," Avco did not file a financing statement with respect to either Ltd. or taxpayer to perfect its interest as to them.

 Because the estoppel created an interest or rights in Construction, binding on taxpayer and its creditors, that interest or rights were sufficient under section 9–204 of the code to permit Avco's security interest to attach to the collateral. Avco's subsequent filing of the financing statement as to Construction was then sufficient under section 9–302 to perfect Avco's security interest in the collateral without any additional filing as to Ltd. or taxpayer. In view of the facts here that Construction and taxpayer were both wholly-owned subsidiaries of Ltd. and that all three companies bore the highly distinctive name of "Canadian Parkhill," it could not be contended that a searching creditor of taxpayer could be seriously misled upon discovering the security interest claimed against Construction. The similarity in names would immediately lead to disclosure that the collateral was identical to that which the creditor believed was owned by taxpayer. Thus the application of the Illinois law of rights by estoppel and reliance would have no adverse effect upon the commercial relations intended to be protected by the Uniform Commercial Code as enacted in Illinois. See In re Colorado Mercantile Co., 299 F.Supp. 55, 58–59 (D.Colo. 1969).

The judgment of the district court is affirmed.