**Theo. Hamm Brewing Co., a Corporation, Plaintiff-Appellant, v. First Trust & Savings Bank of Kankakee, a Corporation, Defendant-Appellee.**

Gen. No. 68–48.

Third Judicial District.

December 11, 1968.

Gray, McIntire & Petersen, of Kankakee, for appellant.

Edwin Sale, of Kankakee, for appellee.

SCHEINEMAN, J.

Harold E. Lape was a beer distributor for the plaintiff. In July of 1962 he obtained a loan from the defendant bank for which he gave a Security Agreement and Consignment covering an inventory of beer in containers, and with an after-acquired property clause. This document was filed with the Secretary of State, together with a Financing Statement as required by law in order to perfect its Security Interest.

Lape failed to keep up his payments to the bank according to his arrangements so that early in December of 1963 the bank took possession of the property Lape had on hand and thereafter sold it.

In the meantime the plaintiff was also having trouble over collections from Lape. He had asked Hamm's for a three-load credit in a letter dated in April, 1961, which enclosed a financial statement. Hamm's refused this because of his "very small net worth." However, sometime later they did place him on a one-load credit.

Early in 1963 Lape's checks began to be returned because of insufficient funds. In May, plaintiff tried to set up a system of operations for Lape, stating in a letter to him that he had to accrue a profit that summer or be in "desperate financial shape."

This proved to be prophetic. From time to time checks drawn by Lape would be returned for insufficient funds. In December on the 9th, 12th, 16th and 19th he bought loads of beer for which he gave checks, all of these checks were returned for insufficient funds. Thereafter Hamm's was disposed to repossess the beer but found it had already been taken by the bank. Another creditor of Lape had obtained a judgment against him on December 2, 1963, for more than $9,000.

192

The foregoing data appears from pleadings, motions, exhibits and affidavits on file in a suit wherein plaintiff asserted the right of a seller to possession of goods sold upon a written representation of solvency given by Lape, having reference to the checks that failed to clear. The bank denied that checks were a representation of solvency, and also claimed it stood in the position of a purchaser. The court decided the argument in favor of the bank and gave it a judgment on the pleadings dismissing the complaint with prejudice. Hamm's brings this appeal.

The parties are in agreement that the applicable law must be found in the Uniform Commercial Code which appears in chapter 26, Ill Rev Stats, but they disagree as to the proper interpretation of its various provisions. The numbers in this opinion refer to the section numbers of the Code in chapter 26.

Section 2–702(2) provides for reclaiming goods by a seller within 10 days if the buyer was insolvent. "But if misrepresentation of solvency has been made to the particular seller in writing within 3 months before delivery, the 10-day limitation does not apply."

The bank's security interest in the beer as inventory, under 9–109 was properly perfected pursuant to 9–302. Thus, with the after-acquired property clause in the Security Agreement, the bank should be entitled to priority in the beer as against Hamm's unless Hamm's complied with 9–312 or unless Hamm's is entitled to reclaim the beer under 2–702(2) previously quoted. Hamm's did not avail itself of 9–312 protection, and thus relies solely on its argument of right to the beer under 2–702(2). Hamm's attempt to take possession of the beer came more than ten days after the delivery of the last load of beer, and thus the only provision of section 2–702(2) available to Hamm's is that permitting reclamation without regard to the ten-day limitation if a written misrepresentation of solvency is made within three months before delivery.

The writings of Lape's which appear in the exhibits and affidavits incorporated in the pleadings and relied upon as representations of solvency received in the three months prior to final delivery, consist of checks for the loads. The issue is thus presented whether the checks here constituted written misrepresentations of solvency. We view the question of the status of the checks as a question of fact. The parties have not directed the court's attention to any cases discussing the issue in relation to 2–702(2) nor have we been able to find any. However, other questions involving the conduct of parties in certain circumstances having consequences under the Code have been treated as questions of fact, e. g., preservation of collateral, Travers v. Liberty Bank, 5 UCC Rep 535 (Mass Sup Ct 1967), and in other areas, the Code itself directs when an issue is to be determined by the court as a matter of law, i. e., 2–302. Further, occasions can be imagined where the same writing is a representation of solvency in one instance, but would not be in another, depending upon the surrounding circumstances. Under pre-Code law in Illinois, requirements for reclamation from a buyer, such as intent, were treated as questions of fact, e. g., Huthmacher for Use of Levy v. Lowman's Sons, 66 Ill App 448.

The Code could have usurped the whole field of law as to commercial transactions, but it does not purport to do so. By 1–103 it states that certain rules of common law may still be consulted on a number of subjects, including such items as misrepresentation, and fraud.

The trial court here entered judgment on the pleadings for the defendant Bank. We could therefore affirm the trial court judgment only if the undisputed facts in this case submitted in the form of affidavits and exhibits would permit the trial court to rule that as a matter of law, the facts here did not permit Hamm's to utilize the rights accorded by 2–702(2), i. e., that the

checks and the use thereof did not amount to representations of solvency.

■ ■ Although 2–702(2) does not so prescribe in express terms, an implicit requirement of the section is that the particular writing be treated as a representation by the seller. While the check can comply with the literal requirements of a writing, i. e., in writing, addressed to the particular seller and dated within three months of the delivery, unless the writing is treated by the seller as a representative, he should not be accorded the benefit of the section.

■ ■ At least one indication of treatment of a writing as a representation is whether the seller relied upon the writing as an element in determining its course of dealing with the buyer. Section 2–702(2) does not specifically require reliance; however, the concept is present by implication. In reasonable commercial expectation, the seller does not expect his buyer to be insolvent, and relies on this expectation.

Official Comment indicates that any receipt of goods on credit is a tacit representation of solvency. Thus if reliance was not relevant in any case, the presence of a writing as a determinative factor would be meaningless. Cases decided in Illinois involving misrepresentation in commercial transactions are of guidance here, and can properly be considered, as above noted. In cases such as American Merchant's Union Exp. Co. v. Willsie, 79 Ill 92; Schweizer v. Tracy, 76 Ill 345, reliance was an obvious element, as it has always been in the Illinois law of misrepresentation.

■ In determining whether a party had a right to rely on false representations, the representations must be viewed in light of facts of which the injured party had, or could by exercise or ordinary prudence, have had knowledge. Morel v. Masalski, 333 Ill 41, 164 NE 205.

One who claims fraud in representations that turn out to be false, must have relied thereon. 23 Am Jur, Fraud and Deceit, § 141, p 939. One does not rely on representations who does not believe them. 23 Am Jur, id., § 143.

If treatment by the seller of the writing as a representation and reliance by the seller was not necessary, 2-702(2) could be utilized to protect a seller who knows full well that his buyer is insolvent, but continues to sell to him, then reclaims the property when the buyer does not pay as promised or when another party appears on the scene. Section 1-203 requires dealing in good faith, and this requirement would not be met by the conduct just described, and would seem to require that a seller not be able to profit by such a course of conduct.

Hamm's had in its file a financial statement of Lape as of December 31, 1962, which showed a net worth of about $4,000. For several months thereafter there was a constant recurrence of Lape's checks returned because N. S. F. or where the signature was not authorized. Then Lape and his wife delivered to Hamm's a demand note for $10,000 dated May 9, 1963. If Hamm's were dealing in "good faith" they would have to know that an honest, financial statement by Lape, showing this note as a liability, against $4,000 net worth of 5 months previous thereto, would make him insolvent.

Of course the $9,000 judgment of Dec. 2, 1963, would also make him insolvent, but Hamm's claim they had no knowledge or notice of this judgment, and we must accept that statement as true. But they knew that their elaborate plan for the guidance of Lape, presented in May, had not been working as hoped, his checks continued to be dishonored so that payment for beer was frequently delayed. And they certainly knew that his check for $4,178.09 in late September was dishonored for N. S. F. With all the knowledge and experience Hamm's had with Lape, they proceeded to sell him loads

196

of beer in December to the extent that they claim over $12,000 for three loads.

We cannot regard these facts as showing any basis for reliance on previous or current checks as true representations of solvency; this type of conduct cannot be regarded as the "good faith" required by 1–203, nor is it any indication of "ordinary prudence."

In our opinion this situation justified the judgment for the defendant, so that we need not consider any other point. The judgment is affirmed.

Judgment affirmed.

ALLOY, P. J. and STOUDER, J., concur.