**FEDERAL SAVINGS AND LOAN IN-
SURANCE CORPORATION,**
Plaintiff,

v.

**William SZARABAJKA et al.,**
Defendants.

**No. 67 C 189.**

United States District Court,
N. D. Illinois, E. D.

July 21, 1971.

Wm. A. Carey, and Kael B. Kennedy, Pope, Ballard, Kennedy, Shepard & Fowle, Chicago, Ill., for plaintiff.

Thaddeus J. Bojanowski, Elward & Macie, Chicago, Ill., for defendants Racina and Kowalko.

John C. Tucker, Jenner & Block, Chicago, Ill., for defendant Vernon Sherman.

Anna R. Lavin, Chicago, Ill., for defendant, Nowak.

Defendant Quinn Hogan appeared pro se.

## MEMORANDUM OPINION

DECKER, District Judge.

On February 8, 1971, the jury returned a verdict in this cause in favor of plaintiff, Federal Savings and Loan Insurance Corporation ("FSLIC"), and against various defendants. Under Count I, defendants Vernon V. Sherman, Jerome S. Morris and Joseph W. Nowak were found liable in the sum of $150,000 for fraud in the so-called Riverwoods transaction; defendant Quinn Hogan was found liable in the sum of $20,000 for fraud in the so-called Vernon Hills transaction. Under Count II, defendants Joseph Racina and Edward Kowalko were found liable for negligence, and an award of $5,000 was made. Now Nowak, Sherman and Morris have filed post-trial motions. F.R.Civ.P. rule 50.

Following the trial, the FSLIC filed a $30,760.51 bill of costs with the Clerk of the Court, who allowed $29,760.51 worth of the bill. All defendants, except Ho-

gan, have moved the court to review the clerk's taxation of costs. F.R.Civ.P. rule 54(d).

## I. *Post-trial Motions*

### A. *Defendant Quinn Hogan*

Hogan has moved for judgment notwithstanding the verdict, or in the alternative, for a new trial. F.R.Civ.P. rule 50(b). He argues that evidence of a deficient legal description in a mortgage on the Vernon Hills property was improperly admitted into evidence, because it was conclusively determined in a prior proceeding that no fraud was perpetrated in drawing up the mortgage.

Hogan was an officer of and majority shareholder in Vernon Hills, Inc., when it entered into reorganization proceedings in 1962. As security for a loan made to the debtor, Service Savings and Loan Association ("Service") held a mortgage on the Vernon Hills Country Club golf course. The debtor's trustee petitioned the district court for a determination of the value of Service's security interest, which petition was referred to a special master for a hearing.

During the pendency of the valuation hearing, Service petitioned to reform its mortgage on the Vernon Hills Country Club. It claimed that, due to a mistake of fact arising from a scrivener's error, the legal description set out in the mortgage failed to include the entire eighteen holes of the golf course. Service petitioned the court to reform the description so as to include the legal description of the entire golf course, as the parties to the mortgage allegedly had agreed in the first place.

The FSLIC, in its capacity as assignee of Hillside Savings and Loan Association ("Hillside"), opposed the reformation petition on the ground that it held certain mortgages on that part of the golf course which Service sought to have included in its mortgage. The master heard proofs on the matter, and after the parties rested, he granted Service leave to file an amended petition for reformation based on the alleged fraud of the debtor. His Report and Recommendations (submitted May 25, 1964), upon which Hogan now relies, was affirmed and approved in its entirety by the district court. In the Matter of Vernon Hills, Inc., No. 62. B 9719 (N.D.Ill.1964), and affirmed on appeal, 348 F.2d 4 (7th Cir. 1965).

Hogan relies in particular upon ¶9 of Part I of the special master's report:

"9. Service failed to prove by clear and convincing evidence that Vernon Hills, Inc. or its agents intended to or engaged in fraudulent or deceitful conduct in connection with the preparation of the $700,000 and $850,000 mortgages or that Vernon Hills, Inc. or its agents by any statements, misrepresentations, acts or conduct, misled or perpetrated any fraud upon Service."

Hogan argues, in effect, that the above finding collaterally estops any finding in this court that he committed fraud in procuring the loan in the Vernon Hills transaction.

■■ A preliminary difficulty with Hogan's argument in support of his motion is that it asserts an affirmative defense which was not pleaded in conformity with Rule 8(c) of the Federal Rules of Civil Procedure. The defenses enumerated in Rule 8(c) must be set out in responsive pleadings, otherwise they are waived. Factor v. Carson, Pirie Scott & Company, 393 F.2d 141, 150 (7th Cir.), cert. denied, 393 U.S. 834, 88 S.Ct. 107, 21 L.Ed.2d 105 (1968) (estoppel); Wagner v. Fawcett Publications, 307 F.2d 409, 412 (7th Cir. 1962), cert. denied, 372 U.S. 909, 83 S.Ct. 723, 9 L. Ed.2d 718 (1963) (statute of limitations). Hogan did not plead the defense of collateral estoppel. He raised it first at trial, and then neglected to amend his pleading to include it. F.R.Civ.P. § 15(b). Thus, he should be held to have waived the defense.

■ However, even if the court should address itself to the merits of

Hogan's argument, *cf.* Tornello v. Deligiannis Brothers, Inc., 180 F.2d 553, 556 (7th Cir. 1950), there is little question that the collateral estoppel argument is without merit. In order for a finding of fact in a previous case to have a binding effect upon a finding in a subsequent case, the fact must be material and controlling in both cases, and it must also conclusively appear that the fact in issue was necessarily determined by the first court. Insull v. New York, World-Telegram Corp., 273 F.2d 166, 168 (7th Cir. 1959), cert. denied, 362 U.S. 942, 80 S.Ct. 807, 4 L.Ed.2d 770 (1960). Despite the sweeping language found in ¶ 9 of the master's report, quoted above, it is apparent from a reading of that entire report and from a reading of the Court of Appeals opinion, 348 F.2d at 6–8, that the only issue necessarily determined in the previous proceeding was that no fraud was committed in the transcription of the legal description. Service petitioned for reformation of the legal description only; it did not wage a full-scale attack upon the procurement of the loans by Vernon Hills, Inc. The main ground relied upon by Service was mistake of fact. Only after all the evidence was in did Service amend its petition to allege fraud. The Court of Appeals opinion makes it clear that Service confined the scope of its petition before the special master to the issue of whether the legal description on its mortgage was incorrect, and in particular, whether an oversight or a mistake caused it.

■ By contrast, the issue in the instant proceeding was whether Hogan committed fraud in the procurement of the mortgage loans. Evidence was offered, for example, that Hogan induced the granting of the loans with a bribe. Thus, the issue in this court was much broader than the one necessarily determined before the special master. *Cf.* Yates v. United States, 354 U.S. 298, 337, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957). Evidence of the defective mortgage was not dispositive of the fraud issue; it was merely one of many factors to be considered by the jury in deciding whether the loans had been procured by fraud, and if so, how much plaintiff was damaged thereby.

In concluding that plaintiff was not collaterally estopped from introducing into evidence the mortgage with the defective legal description, I do not feel it necessary to reach the further objection that Hogan, who was not a party to the reformation petition, cannot avail himself of the finding of no fraud. However, there is some question whether Hogan, an officer and shareholder of Vernon Hills, Inc., is in sufficient privity with the corporate debtor to take advantage of the finding of the special master. Compare Nichols v. Alker, 126 F. Supp. 679 (E.D.N.Y.1954), aff'd, 231 F. 2d 68 (2d Cir.), cert. denied, 352 U.S. 829, 77 S.Ct. 42, 1 L.Ed.2d 51 (1956), with Crown Kosher Super Market of Mass., Inc. .v. Gallagher, 176 F.Supp. 466, 470 (D.Mass.1959), rev'd on other grounds, 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536 (1961). See also, Grantham v. McGraw Edison Co., 444 F.2d 210, 212–213 (7th Cir. 1971).

■ Hogan makes a second argument in support of his contention that the deficient legal description in the mortgage should not have been introduced into evidence. He asserts that since the FSLIC already held title to the remaining portion of the golf course in its capacity as assignee of Hillside, it could not possibly have suffered damage by the failure to include that remaining portion in the Vernon Hills, Inc. mortgage. However, the evidence disclosed that the FSLIC was required to pay for the deed it acquired from Vernon Hills' trustee in bankruptcy, and that deed included property outside of that in the mortgage's legal description. Thus, it is clear that the FSLIC had to pay for that part of the property not included under the Service mortgage, hence it suffered damage which it could recover in the instant action.

## B. *Defendant Vernon V. Sherman*

Sherman has moved for judgment notwithstanding the verdict, F.R.Civ.P. § 50(b), on the ground that the FSLIC's claim against him was satisfied in full by the foreclosure of Service's mortgage on the Riverwoods property. Sherman relies upon the state court's decree of foreclosure, which deemed the indebtedness of the Riverwoods property to be "satisfied in full", and upon Service's filing a consent thereto. Ill.Rev.Stat. ch. 77, § 18d.

However, a prior judgment does not foreclose a subsequent claim based upon an entirely separate and distinct cause of action. See United States v. Temple, 147 F.Supp. 118, 122 (N.D. Ill.1956); Household Finance Corp. v. Suhr, 44 Ill.App.2d 292, 294, 193 N.E.2d 611, 613 (1963). The prior decree in the state court was entered in a mortgage foreclosure proceeding. The instant action was one for fraudulent procurement of the mortgage loan. The two causes of action are distinct and separate, and a judgment in the former does not preclude a prosecution of the latter. Bankers Trust Co. v. Pacific Employers Insurance Co., 282 F.2d 106, 110 (9th Cir. 1960), cert. denied, 368 U.S. 822, 82 S.Ct. 41, 7 L.Ed.2d 27 (1961).

Sherman's second argument is that the claim of fraud is barred by operation of the so-called "single actor" doctrine. Sherman contends that William and Edward Szarabajka so dominated the affairs of Service that they were equivalent to it as its sole actors, citing, *inter alia*, Munroe v. Harriman, 85 F.2d 493 (2d Cir.), cert. denied, Harriman Nat. Bank & Trust Co. v. Munroe, 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443 (1936). The Szarabajkas' knowledge of the fraudulent acts in this case should thereby be imputed to Service, and to its assignee, the FSLIC. Such knowledge of the fraud would, of course, bar plaintiff from any recovery for fraud, because it would be impossible to establish reliance. See Theo. Hamm Brewing Co. v. First Trust & Savings Bank of Kankakee, 103 Ill.App.2d 190, 242 N.E.2d 911 (1968).

The main objection to defendant's argument is that, based on the evidence of this case, the Szarabajkas cannot be said to be the "sole actors" of Service. Rather, the bank was shown to act not only through the Szarabajkas, but through its attorney as well as the members of its Board of Directors. The Szarabajkas did not so dominate Service as to be deemed its sole actors. Anderson v. General American Life Insurance Co., 141 F.2d 898, 907 (6th Cir. 1944), cert. denied, 323 U.S. 798, 65 S.Ct. 554, 89 L. Ed. 637 (1945); see City National Bank of Fort Smith, Arkansas v. Vanderboom, 290 F.Supp. 592, 605 (W.D.Ark.1968), aff'd 422 F.2d 221 (8th Cir.), cert. denied, 399 U.S. 905, 90 S.Ct. 2196, 26 L. Ed.2d 560 (1970).

Sherman's final argument is that plaintiff is barred from recovering under the second Riverwoods loan, because no reliance was placed on the Mulhern appraisal of the property at the time of the $3,800,000 loan. Sherman cites FSLIC v. Cook, 419 F.2d 1296 (7th Cir. 1970), in which the Court of Appeals affirmed the district court's finding that there was no reliance placed upon a fraudulent appraisal of mortgaged property. However, the court in *Cook* emphasized that it was for the trier of fact to determine whether reliance had been placed upon the appraisal. In the instant cause, the jury evidently concluded that reliance was placed upon the false appraisal, and I can see no reason to upset that determination. Moreover, there was substantial evidence, particularly the evidence of a bribe, that the appraisal was not the only cause for the original loan being made. Accordingly, I find no merit to this or the other two arguments of Sherman's, hence his motion for judgment n. o. v. must be denied.

## C. *Defendant Jerome Morris*

Morris has urged several grounds for the court to enter judgment notwithstanding the verdict. F.R.Civ.P. § 50(b). His first is that there was no evidence of fraudulent misrepresentation of the value of the Riverwoods property which would support a verdict for plaintiff. However, there was evidence of a bribe made to procure the mortgage loan. Morris would have the court conclude that the evidence of the bribe was insufficient to support a verdict, and thus substitute its judgment for the jury verdict. This the court will not do, since it finds the evidence of the bribe substantial enough to support the verdict. See Fontana Aviation, Inc. v. Beech Aircraft Corp., 432 F.2d 1080, 1084 (7th Cir. 1970), cert. denied, 401 U.S. 923, 91 S.Ct. 872, 27 L.Ed.2d 826 (1971).

Morris' main contention is that the original $3,100,000 loan (Riverwoods I) and the subsequent $3,800,000 refinancing of the loan (Riverwoods II) were separate and distinct transactions, and that the evidence implicated Morris only with respect to the fraud in Riverwoods I. Further, Morris argues that the proper measure of damages is the difference between the amount of the loan and the value of the security at the time of the loan, and that no evidence of the value of the Riverwoods I property having been submitted, it was therefore improper for the jury to return a verdict against him.

However, Morris' characterization of the Riverwoods I and Riverwoods II loans as separate transactions represents his view of the evidence only. The jury quite obviously took a contrary view, and I cannot say that it was unjustified. True, several of the actors who were involved in Riverwoods I had largely withdrawn from the scene by the time of Riverwoods II. However, the evidence was sufficient to support a conclusion by the jury that the fraudulent procurement of the original loan made the refinancing of it clearly foreseeable, and thus part of the entire conspiracy. See United States v. Hickey, 360 F.2d 127, 141 (7th Cir.), cert. denied, 385 U.S. 928, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966). Under such a construction of the evidence, it was entirely proper for plaintiff to rely upon a later appraisal of the security property, one which valued the property as of a date subsequent to the Riverwoods loan. The use of the later appraisal figure did not render the computation of damages unduly speculative.

Accordingly, defendant Morris' motion for judgment n. o. v. must be denied.

## II. *Motions to Review the Taxation of Costs*

Defendants Sherman, Morris, Nowak, Racina and Kowalko have moved to have the court review the Clerk's taxation of costs in the amount of $29,760.51. F.R. Civ.P. § 54(d). They object to the amount taxed for (a) witness fees, mileage and daily subsistence, (b) certified documents, (c) the trial transcript, (d) deposition transcripts and attendance, and (e) copies of exhibits and documents necessarily obtained for use in the case.

## A. *Witness Fees, Mileage and Daily Subsistence*

The Clerk taxed a total of $194.08 for witness fees, mileage, and daily subsistence for seventeen different individuals. 28 U.S.C. §§ 1920(3), 1821. Defendants Sherman, Morris, Nowak, Racina and Kowalko object on the ground that certain of the individuals were not called to testify at trial, but were used solely for the convenience of plaintiff's counsel in preparation of the case.

While it is true that a witness need not be under subpoena and need not actually testify in order for his fees and mileage to be assessed, nevertheless it must be shown that his testi-

mony was relevant and material to an issue in the case and reasonably necessary to its disposition. See Bowman v. West Disinfecting Co., 25 F.R.D. 280, 284 (E. D.N.Y.1960); Bank of America v. Loew's International Corp., 163 F.Supp. 924, 928 (S.D.N.Y.1958). An examination of the list of potential witnesses who were never called, as well as (where available) their depositions, leads me to conclude that their testimony was relevant and material in this case and reasonably necessary to its disposition. Therefore, the $194.08 originally taxed is allowed.

### B. *Certified Documents*

■ The Clerk taxed a total of $52.-00 for three certified documents used by plaintiff. 28 U.S.C. § 1920(4). Defendants Sherman and Morris object on the ground that certain of the items were used in the Vernon Hills part of Count I only, and not in the Riverwoods part thereof, hence those costs should not be taxed against them. Defendant Nowak objects on the ground that the certified copy of the indictment and the judgment of conviction against William Szarabajka and Joseph Nowak were not used at trial.

Under all the circumstances of this case, I find that the Vernon Hills mortgages and plats were "necessarily obtained for use in the case," 28 U.S.C. § 1920(4), but that the indictment and judgments of conviction of Nowak and Szarabajka were not so obtained. Compare American Steel Works v. Hurley Construction Co., 46 F.R.D. 465, 471 (D.Minn.1969), with Advance Business Systems & Supply Co. v. SCM Corp., 287 F.Supp. 143, 164 (D.Md.1968), modified, 415 F.2d 55 (4th Cir. 1969), cert. denied, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101 (1970). Therefore, only $40.00 is taxable to defendants as costs for exemplification.

### C. *Trial Transcript*

The clerk taxed $7,681.50 for daily copy of the trial transcript. Defendants Sherman, Morris, Nowak, Racina and Kowalko object on the ground that the premium paid for daily copy of the transcript was not "necessarily obtained for use in the case." 28 U.S.C.A § 1920(2).

The trial of the case was long, and the facts were complicated. However, my recollection is that daily copy of the transcript was not necessarily obtained for use in the case. Compare Farmer v. Arabian American Oil Co., 379 U.S. 227, 233–234, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964), and Delaware Valley Marine Supply Co. v. American Tobacco Co., 199 F.Supp. 560, 561 (E.D.Pa.1960), with Syracuse Broadcasting Corp. v. Newhouse, 319 F.2d 683, 690 (2d Cir. 1963), and Brookside Theatre Corp. v. Twentieth Century-Fox Film Corp., 11 F.R.D. 259, 266 (W.D.Mo.1951).

■ The case was tried to a jury, and there was little occasion for the court to make use of the daily copy. While the transcript was used from time to time at trial, it was not used so frequently as to require daily copy of the entire trial. Daily copy of important portions could have been arranged with the court reporter. Absent any designation of such portions, plaintiff is not entitled to the cost of the trial transcript at a daily rate.

■ However, it is clear that plaintiff is entitled to the cost of the transcript at the non-premium rate. Defendants' post-trial motions raise factual issues for which the transcript was necessary to refute. Therefore, the cost of the 5,690 page transcript is assessed at the court reporter's rate of $1.00 per page, or a total of $5,690.

### D. *Deposition Transcripts and Attendance*

The Clerk taxed costs of $18,483.37 for deposition transcripts, thereby reducing plaintiff's bill by $1,000. Defendants Sherman, Morris, Nowak, Racina and Kowalko object on the ground that all the depositions were not "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Defendants argue

variously that some of the deponents were never called to testify at trial, that payment of daily copy premium was improper, and that many of the depositions were taken for the convenience of plaintiff's counsel.

▮ A deposition taken within the proper bounds of discovery, even if not used at trial, will normally be deemed to be "necessarily obtained for use in the case," and its cost will be taxed unless the opposing party interposes a specific objection that the deposition was improperly taken or unduly prolonged. Perlman v. Feldmann, 116 F.Supp. 102, 110–111 (D.Conn.1953); see Electronic Specialty Co. v. International Controls Corp., 47 F.R.D. 158, 162 (S.D.N.Y.1969). While an objection was made that the depositions were unduly prolonged and that they inquired into extraneous matter, I find that there is no basis for such a contention.

▮ However, I do find that the depositions of Schaefer, Haddow, Marshall, Fales, Zimmer, DiPirro, Collins, and the nine deponents who are grouped together in plaintiff's itemized list were not called upon to testify, but were used for purposes of investigation and preparation only, and thus were not necessarily obtained for use in the case. Kaiser Industries Corp. v. McLouth Steel Corp., 50 F.R.D. 5, 12 (E.D.Mich.1970). Therefore, the costs taxed by the Clerk should be reduced by $2,541.65.

▮ As for defendants' objection to the daily copy premium paid for certain depositions, it is evident that plaintiff was justified in requesting special service in those instances in which it did so. Each of several key witnesses was deposed on successive days, thus justifying the use of daily copy. However, to the extent that daily copy was improper, the Clerk deducted $1,000 from the original bill for the premium paid therefor. The Clerk's action was altogether proper under the circumstances, and I find that he did not abuse his discretion in making the reduction.

The cost of deposition transcripts and attendance is therefore assessed at $15,941.72.

### E. *Copying Expenses*

▮ The Clerk taxed costs of $3,240.52 for copies of exhibits and documents. Defendants Sherman, Morris, Nowak, Racina and Kowalko object thereto on the grounds that plaintiff has failed to itemize the documents copied and that the documents copied were not "necessarily obtained for use in the case." 28 U.S.C. § 1920(4).

It is obvious that in a long and complicated case such as the instant one, many documents were required to be copied by plaintiff in order to prepare its case. It would be unduly burdensome to require plaintiff to list each document copied. Plaintiff's counsel has verified the amount spent for copying, 28 U.S.C. § 1924, and defendants do not challenge that verification. Moreover, the proof in this bank fraud case relied heavily upon documents, and it is reasonable to assume that many supporting documents were necessary to convey an understanding of the real estate transactions underlying the fraud. Therefore, under all the circumstances of this case, I find that the Clerk's assessment of $3,240.52 as copying costs was proper. See Gillam v. A. Shyman, Inc., 31 F.R.D. 271, 274 (D.Alaska 1962).

### F. *Apportionment of Costs Among Defendants*

The Clerk made no apportionment of costs among defendants, instead assessing the entire amount of costs allowed against all six defendants. Objection has been made by defendants Sherman, Morris, Nowak, Racina and Kowalko, who argue that the costs of the lawsuit should somehow be apportioned to reflect the three separate recoveries under two counts, and that some concession should be made to the fact that plaintiff did not succeed on all issues. See Steel Construction Co. v. Louisiana Highway Comm., 60 F.Supp. 183, 193 (E.D.La.

1945). In response, plaintiff has offered an alternative for apportioning costs, in which the cost borne by each defendant bears the same relationship to the total cost as the judgment against each defendant bears to the total judgment. Schauffler v. United Association of Journeymen & Apprentices of Plumbing and Pipe Fitting Industry, 148 F.Supp. 704, 708 (E.D.Pa.1956), aff'd, 246 F.2d 867 (3d Cir. 1957).

Plaintiff succeeded in proving its case under both counts of the complaint, and indeed, it proved liability for both the Riverwoods and Vernon Hills transactions under Count I, hence no concession need be made by plaintiff. Defendants are liable for the full amount of the costs assessed by the court. Local 205, United Electrical Workers v. General Electric Co., 172 F.Supp. 960, 961 (D.Mass.1959).

Moreover, this is not a case in which costs should be apportioned among defendants, either in the manner suggested by *Schauffler* or in the manner suggested in Appendix A of Morris' brief. The cost of plaintiff's proving its case against each defendant was roughly the same, and it would therefore be unwise to try to somehow break down the total cost into individual assessments.

Therefore, no apportionment of costs will be made, and no concession need be made by plaintiff for issues on which it did not succeed.

### III. *Conclusion*

The post-trial motions of defendants Quinn Hogan, Vernon Sherman and Jerome Morris for judgment notwithstanding the verdict are all denied.

Costs of the trial are taxed against defendants Vernon Sherman, Jerome Morris, Joseph Nowak, Quinn Hogan, Joseph Racina and Edward Kowalko in the amount of $25,215.36.[1]

---

1. This figure includes the sum of $109.04 for fees paid the Clerk and Marshal, which defendants did not dispute.