In the Matter of **BEL AIR CARPETS,**
**INC.,** dba **Tiffany Carpets, Bankrupt.**

Joseph **POTTS,** Trustee-Appellant,

v.

MAND CARPET MILLS, Respondent-
Appellee.

No. 71–1147.

United States Court of Appeals,
Ninth Circuit.

Dec. 15, 1971.

Robert A. Fisher (argued), of Craig,
Weller & Laugharn, Los Angeles, Cal.,
for trustee-appellant.

Nathan Markowitz (argued), Marvin
Neben, of Neben & Starrett, Anaheim,
Cal., for respondent-appellee.

Before BROWNING and CHOY, Cir-
cuit Judges, and CRAIG*, District
Judge.

CHOY, Circuit Judge:

In this California bankruptcy case,
Trustee in Bankruptcy Joseph S. Potts
(the Trustee) appeals an order of the
District Court affirming the denial by
the Referee in Bankruptcy (the Ref-
eree) of the Trustee's application to re-
cover $3,871.92 in carpeting belonging to
Bel Air Carpets, Inc., (the Bankrupt)
received by Mand Carpet Mills (Mand)

---

* The Honorable Walter E. Craig, United States District Judge, Phoenix, Arizona, sitting by
designation.

in an alleged transfer in violation of § 70(d)(1) of the Bankruptcy Act, 11 U.S.C. § 110(d) (1).[1] We affirm.

In late June or early July, 1969, the Bankrupt applied for a line of credit with Mand, submitting a financial statement dated June 30, 1968. Worried by the statement's age, Mand's credit manager was assured by the Bankrupt's president, Morteza T. Meskin, that a new statement dated June 30, 1969 was being prepared, would be forwarded shortly, and would reveal substantially the same financial situation as the 1968 document did. The 1969 statement was never delivered, if it was ever prepared. Mand's credit manager obtained a rush report from Dun & Bradstreet on the Bankrupt, and made telephone inquiries to a factor who had extended credit to the Bankrupt. On the basis of the information on hand, including the 1968 statement, he authorized an extension of credit to the Bankrupt on July 9, 1969.

Within five weeks, the Bankrupt purchased goods totaling $10,365.52, entirely on credit. On August 13, Mand delivered the last shipment, valued at $539.-08. On August 14, the Bankrupt declared insolvency. An involuntary petition in bankruptcy was filed on September 10.

Meanwhile, another carpet mill had commenced an action in the California state courts against the Bankrupt and had levied a bill of attachment on substantially the Bankrupt's entire inventory. On August 19, Mand filed a written demand to reclaim the goods it had shipped to the Bankrupt, and filed a third party claim in the California civil suit, claiming rescission of its contract with the Bankrupt pursuant to § 2702(2) of the California Commercial Code. When the attaching plaintiff defaulted in posting bond, Mand was notified on August 27 that the sheriff would release the carpets to it. Mand actually picked up the goods, worth $3,871.92, on September 19, nine days after the bankruptcy petition was filed.

The Trustee argued that the carpeting recovered by Mand was a § 70(d)(1) post-bankruptcy transfer and, therefore, void as against the Trustee. The Referee found, however, that Mand's entire claim fell within the three-month exception to § 2702(2) and denied the claim.

Mand's right to the carpets was fixed on August 19, when it made its formal declaration of rescission. The statutory demand and the legal right to possession, not actual physical possession of the goods in question, govern the seller's rights. *See* In re Childress, 6 UCC Rep.Serv. 505 (Ref., E.D. Tenn.1969). The "transfer" here occurred on August 19,[2] prior to the date of bankruptcy and we must determine Mand's legal rights as of that date.

Since the Trustee does not contest the Referee's finding that the Bankrupt was insolvent long before his formal declaration of insolvency, this appeal turns upon a construction of § 2702(2) of the California Commercial Code, which provides:

> "Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within 10 days after the receipt, but if *misrepresentation of solvency has been made to the particular seller in writ-*

1. "d. After bankruptcy and either before adjudication or before a receiver takes possession of the property of the bankrupt, whichever first occurs—

"(1) A transfer of any of the property of the bankrupt, other than real estate, made to a person acting in good faith shall be valid against the trustee if made for a present fair equivalent value . . .

"(3) A person having actual knowledge of such pending bankruptcy shall be deemed not to act in good faith . . ."

2. Under the Bankruptcy Act, a "'Transfer' shall include the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property, or upon an interest therein . . ." Bankruptcy Act, § 1(30), 11 U.S.C. § 1(30).

*ing within three months before delivery the 10-day limitation does not apply."* (emphasis supplied)

The statute is straightforward and, on its face, requires (1) a written (2) misrepresentation of solvency (3) made within three months of delivery (4) to the particular creditor who is attempting to rescind the contract. The Official California Code Comment notes, "A seller could recover goods from an insolvent buyer only . . . if · a written misrepresentation of solvency has been made to the particular seller within three months before delivery." It would seem clear that the three month period refers to the time at which the written misrepresentation is presented rather than the actual date the writing bears were it not for the Official Uniform Commercial Code Comment to § 2702(2), which states, "To fall within the [three-month] exception the statement of solvency must be in writing, addressed to the particular seller and *dated* within three months of the delivery." (emphasis supplied). Other commentators have either ignored or rejected this Official Comment and agreed that the written misrepresentation must be presented but not necessarily dated within three months of delivery. *E. g.,* 3 Bender's Uniform Commercial Code Service, § 13.04(c); 1 Hawkland, A Transactional Guide to the Uniform Commercial Code 304 (1st ed. 1964). The courts have not decided this issue.[3]

■ We hold that the policy behind § 2702(2) requires that the written misrepresentation be presented, not dated, within the three-month period. Section 2702(2) was written to extend the protection the common law provided to the seller who unwittingly sells goods on credit to an insolvent buyer. Official Comment 1. Section 2702(2) provides a conclusive presumption of fraud for deliveries made within 10 days of insolvency. Section 2702(2) is similarly aimed at fraud perpetrated within three months of delivery. The protection afforded the seller would be severely limited by allowing the loophole the Trustee would have us create. Reliance upon a financial statement such as that delivered to Mand takes place on the date the statement is delivered, not on the date in the past on which it was purportedly prepared. As the Referee said below,

"It would be overly restrictive to hold that the statement speaks only as of the date of the financial statement and has no continuing voice. The credit grantor would normally infer that the statement continues to represent the facts beyond the date on the writing, subject of course to some variation, but not subject to any radical departure, and the credit seeker intends that the credit grantor shall so rely."

■ The Bankrupt presented a 1968 financial statement which was false as of 1968 and as of 1969. Its president assured Mand that the statement was accurate and that the 1969 statement would be substantially the same. It was primarily on this misrepresentation embodied in the 1968 statement which was presented within three months of deliv-

3. The reported cases deal with the problems of falsity in fact, In re Units, Inc., 3 UCC Rep.Serv. 46 (Ref.Conn.1965), reliance, Theo. Hamm Brewing Co. v. First Trust & Savings Bank of Kankakee, 103 Ill.App.2d 190, 242 N.E.2d 911 (1968), the sufficiency of the writing, *Theo. Hamm, supra*; In re Regency Furniture, Inc., 7 UCC Rep.Serv. 1381 (Ref.E.D.Tenn.1970), or the rights of an intervening bona fide purchaser or lien creditor, Johnston & Murphy Shoes, Inc. v. Meinhard Commercial Corp., 403 F.2d 658 (6th Cir. 1968); First-Citizens Bank & Trust Co. v. Academic Archives, Inc., 10 N.C.App. 619, 179 S.E.2d 850 (1971). In In re Goodson Steel Corp., 2 Bender's UCC Reporter Digest (1971 Supplement), § 2702, A8 (Ref.S.D.Tex. 1968), the written financial statement was dated and presented more than three months before delivery of the goods. In only one case has a court or referee in bankruptcy said in passing that the writing must be dated within three months of insolvency. *Theo. Hamm, supra*, at 242 N.E.2d 915 (dicta).

ery that Mand relied when it extended credit. There would be little doubt that, had the Bankrupt sent Mand the 1968 financial statement with a current cover letter incorporating the enclosed statement, § 2702(2) would be fully operative. There is no reason for a different result in this case. The misrepresentation of solvency was "made" when the fraudulent statement was given within three months of the delivery of the carpets. Whatever the reason behind the arbitrary time requirement, it was not designed to achieve such an anomalous result as the Trustee espouses which is patently contrary to common sense and to the intent of the Code. Mand was entitled to rescind its contract with the Bankrupt and to retain the entire sum it recovered.

Affirmed.