**In the Matter of William Joseph Whistler HARDIN, Bankrupt.**

**James E. SHAPIRO, Trustee, Respondent-Appellee,**

**v.**

**UNION BANK AND SAVINGS COMPANY, Petitioner-Appellant.**

**No. 71–1385.**

United States Court of Appeals, Seventh Circuit.

April 6, 1972.

Donald S. Taitelman, Charne, Glassner, Tehan, Clancy & Taitelman, S. C.,

Milwaukee, Wis., for petitioner-appellant.

Charles F. Schroeder, Burke & Schoetz, Milwaukee, Wis., for respondent-appellee.

Before SWYGERT, Chief Judge, SPRECHER, Circuit Judge, and CAMPBELL, Senior District Judge.*

SPRECHER, Circuit Judge.

This appeal poses the question of whether the seller's remedy of reclamation of goods as a result of the buyer's misrepresentation, as provided by Section 2–702(2) of the Uniform Commercial Code, may be exercised by a party other than the seller to whom the misrepresentation was made.

The following facts were found by the referee in bankruptcy, adopted by the district court and concurred in by both parties in this court:

On March 17, 1969, the bankrupt submitted a financial statement in writing to the Columbus Show Case Company of Columbus, Ohio, in connection with the proposed purchase of certain fixtures and equipment to be used in a drug store which the bankrupt proposed to open in Wisconsin. The parties conceded that the statement, a balance sheet as of the close of business on March 14, was a misrepresentation of solvency made within three months before delivery of goods.

On or about April 1, 1969, the goods were sold pursuant to a contract of sale between Columbus and the bankrupt. On May 16, the goods were shipped to the bankrupt, who received them on May 17.

On June 20, 1969, the bankrupt executed an installment note for $31,401 to Columbus, payable in 60 consecutive monthly installments of $523.35 commencing on August 15, 1969. The note was a "judgment note" which authorized confession of judgment by an attorney in any court. On the same day the note was endorsed "without recourse" to the petitioner, Union Bank and Savings Company of Bellevue, Ohio.

Also on the same day, June 20, 1969, a "General Installment Sale and Security Agreement" was executed by Union Bank as the "seller-secured party" and the bankrupt and his wife as "buyers-debtors," covering the fixtures and equipment. The contract appears to be the standard form of security agreement now used under the Uniform Commercial Code to replace a conditional-sale contract.

On August 4, 1969, the bankrupt filed a voluntary petition in bankruptcy. On August 11 a financing statement was filed with the Register of Deeds for Ozaukee County and the Secretary of State of Wisconsin. The financing statement listed Union Bank as the "secured party" and the bankrupt and his wife as "debtors."

The trustee in bankruptcy filed a petition for a private sale of the fixtures and equipment, alleging that the Union Bank's security interest had not been perfected since it was filed seven days after the filing for bankruptcy.

Union Bank filed a response and counterclaim alleging that it was entitled to reclaim the fixtures and equipment, not as a secured creditor but as the "transferee" of the seller, Columbus Show Case Company.

The parties agreed to the sale of the goods but reserved the right to have the claim transferred to the proceeds of sale, which amounted to approximately $19,000.

After considering the stipulated facts, the referee in bankruptcy entered an order denying reclamation. Union Bank filed a petition for review with the district court, which affirmed the referee's order. Union Bank then proceeded with this appeal.

The referee in his decision observed: "The argument advanced on behalf of the Union Bank is somewhat novel and ingenious. It is an attempt to salvage a

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

secured status from a situation caused by the failure of the Bank to timely file a financing statement in the office of the Secretary of State and the local Register of Deeds." The argument was based upon a provision of the stipulation of facts entered into by the trustee in bankruptcy and Union Bank incorporating an allegation from the bank's counterclaim that the "Union Bank and Savings Company is transferee of the Columbus Show Case Co." It was also based upon the right of a seller of goods to reclaim those goods under the circumstances of Section 2–702(2) of the Wisconsin Uniform Commercial Code which provides (W.S.A. § 402.702(2) ):

> "Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within 10 days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within 3 months before delivery the 10-day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay."

Union Bank contended that in addition to its security interest, which was concededly filed too late, it had an interest as the transferee of the seller's right of reclamation under Section 2–702(2).[1]

The referee concluded that Union Bank could not as a matter of law be entitled to the seller's right of reclamation. The district court adopted that conclusion, but added that despite the stipulation the bank did not as a matter of fact

become the seller under Section 2–702(2). We affirm the district court's judgment.

At the outset it should be noted that Section 1–103 provides, "Unless displaced by the particular provisions of this code the principles of law and equity, including the law merchant and the law relative to . . . fraud, misrepresentation . . . shall supplement its provisions." W.S.A. § 401.103.

The Wisconsin annotations to Section 2–702(2) reveal that the seller's right to reclamation for the buyer's misrepresentation was part of Wisconsin's pre-code law. Lee v. Simmons, 65 Wis. 523, 27 N.W. 174 (1886). The Wisconsin common law of false representations, similar to that of most states, requires that "[t]o be actionable, the false representation must consist, first, of a statement of fact which is untrue; second, that it was made with intent to defraud and for the purpose of inducing the other party to act upon it; third, that he did in fact rely on it and was induced thereby to act, to his injury or damage." Larson v. Splett, 267 Wis. 473, 475, 66 N.W.2d 181, 182 (1954); Household Finance Corp. v. Christian, 8 Wis.2d 53, 98 N.W.2d 390 (1959). One of the key elements prerequisite to relief from false representation has always been reliance.[2]

■ Section 2–702(2) itself indicates its preservation of the necessity of reliance when it states that "if *misrepresentation* of solvency has been *made to the particular seller* in writing within 3 months before delivery the 10-day limitation does not apply." W.S.A. § 402.-702(2) (emphasis added).[3] The ad-

---

1. It could be argued that the seller's right of reclamation is also a security interest requiring filing for perfection. But for the purpose of this opinion, without deciding that issue, we assume that it is not a security interest and, in the hands of the seller, would be exercisable without filing. In re Mel Golde Shoes, Inc., 403 F.2d 658 (6th Cir. 1968).

2. Theo. Hamm Brewing Co. v. First Trust and Savings Bank, 103 Ill.App.2d 190, 195, 242 N.E.2d 911, 915 (1968) : "Cases

decided in Illinois involving misrepresentation in commercial transactions are of guidance here [in construing Section 2–702(2)], and can properly be considered. . . . [In the Illinois cases] reliance was an obvious element, as it has always been in the Illinois law of misrepresentation."

3. The official U.C.C. comment adds : "An exception to this time limitation is made when a written *misrepresentation* of solvency has been *made to the particular*

dition of the adjective "particular" to the word of art "seller," which is used without the adjective throughout Article 2 of the code, is a fairly explicit indication that the drafters were aware of, and intended to continue, the reliance requirement of common law misrepresentation actions.

Some commentators have taken the position that the seller's right of reclamation based on misrepresentation is personal to the seller and cannot be exercised by anyone else.[4] That view is supported by early Wisconsin cases such as Tyson v. Ranney, 89 Wis. 518, 61 N. W. 563 (1895), where a husband negotiated with the owner of land who misrepresented. The husband directed the owner to convey the land to his wife, who was held to have no right of action against the owner since the right was deemed personal to the husband. It is also supported in some degree by Section 2–707(2) of the code, which provides that "a person in the position of a seller" may withhold or stop delivery, resell, and recover incidental damages, but does not specify reclamation. W.S.A. § 402.-707(2).[5]

[■] There appears to be ample support for a conclusion that a financing agency such as Union Bank[6] cannot exercise the seller's right of reclamation and thus circumvent entirely the filing requirements of Article 9.[7] Nor would such a conclusion impose an undue commercial burden on a financing agency. In this case, Union Bank could have preserved its full panoply of rights, including its interest in the specific goods, by simply filing the financing statement promptly.

[■] Despite Union Bank's insistence that the stipulation that it was the "transferee" of the seller foreclosed any further consideration of the facts surrounding the transaction, it is obvious that matters of commercial importance cannot be dealt with in a factual vacuum. The record here is barren of any evidence that the buyer ever delivered the balance sheet to Union Bank. There is no evidence that Union Bank had any knowledge of the facts contained in the balance sheet prior to the sale on April 1, 1969, or prior to the delivery and receipt of the goods on May 16 and 17. Nor is there evidence that Union Bank

---

*seller* within three months prior to the delivery. *To fall within the exception the statement* of solvency *must be* in writing, *addressed to the particular seller* and dated within three months of the delivery" (emphasis added).

4. For example, see Note, 68 Yale L.J. 751, 761 (1959) : "Ample ground exists for holding that reclamation is not a . . . 'right in the goods,' and for denying that right to a financing agency. Viewed as a right to rescind for fraud, reclamation could be deemed personal to the seller. Furthermore, though not a security interest when exercised by the seller, the right to reclaim might be considered such an interest when acquired by a financing agency. Section 9–113 would then require filing and a security agreement for the continued perfection of the interest."

5. The official U.C.C. comment adds that a financing agency is included in the term "a person in the position of a seller." Furthermore, Article 2 (sales) "does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to oper-

ate only as a security transaction. . . ." Section 2–102, W.S.A. § 402.102. On the other hand, Article 9 (secured transactions) applies to "any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures. . . ." Section 9–102, W.S.A. § 409.102.

6. The code definition of a "financing agency" applies directly to Union Bank since it "includes also a bank or other person who similarly intervenes between persons who are in the position of seller and buyer." Section 2–104(2), W.S.A. § 402.104(2). A financing agency or commercial lender "is obviously the primary target of Article 9." In re J. V. Gleason Co., 452 F.2d 1219, 1222 (8th Cir. 1971).

7. The referee in bankruptcy in this case observed: "If a 'financing agency' has the rights of reclamation given to a 'seller' in § 402.702, we might as well repeal many sections of the chapter on secured transactions. It would circumvent entirely the filing requirements of Chapter 407 which constitute the 'heart' of secured financing."

relied on the balance sheet or the representations which it contained at any time. As we have indicated, reliance remains a prerequisite to reclamation relief under the code. In re Bel Air Carpets, Inc., 452 F.2d 1210, 1212 (9th Cir. 1971). The reliance contemplated by Section 2–702(2) is fulfilled only by the seller's delivery of the goods.

Since the bank cannot take advantage of the seller's right of reclamation, we affirm the district court's judgment without reaching the other issues raised.[8]

Affirmed.

---

8. The issues not reached include (1) whether Union Bank "in fact" became a seller, which was answered negatively by the district court; and (2) the effect on this transaction of the amendment of W.S.A. § 402.702(3) by the Wisconsin legislature effective May 23, 1969 to make the seller's right of reclamation subject to the rights of a good faith purchaser but not of a lien creditor. The amendment raises the questions of (a) whether it applies to goods sold and delivered by May 17, 1969, and (b) whether a trustee in bankruptcy is a good faith purchaser (see In re Kravitz, 278 F.2d 820 (3rd Cir. 1960). The latter question was answered positively by the referee and district court.