511 P.2d 912 (1973)
GUY MARTIN BUICK, INC., Plaintiff-Appellee,
v.
The COLORADO SPRINGS NATIONAL BANK, Defendant-Appellant.
No. 72-137.
Colorado Court of Appeals, Div. I.
April 24, 1973.
Rehearing Denied May 30, 1973.
Certiorari Granted July 23, 1973.
Kane, Donley & Wills, Lee Wills, Colorado Springs, for plaintiff-appellee.
Spurgeon, Aman & Hanes, Richard W. Hanes, Colorado Springs, for defendant-appellant.
Selected for Official Publication.
SMITH, Judge.
The facts of this appeal, essentially undisputed, present the question of a seller's right to recover items delivered to a purchaser whose secured lender obtained a security interest in the items.
On or about May 15, 1970, Mark III purchased four used cars from Guy Martin Buick, and upon delivery of the cars executed and delivered a $2,700 check payable to Guy Martin Buick. Immediately thereafter, Mark III went to the Colorado Springs National Bank for a loan of $2,500. At that time, Mark III did not have the certificates of title to the cars because one of the certificates had not yet been received from out of state. The record indicates that Guy Martin Buick delayed depositing Mark III's check until it obtained the certificates of title to the cars. Upon request from the bank, Guy Martin
*913 Buick agreed to deliver the title certificates directly to the bank. On this assurance, the bank made the loan. A document entitled "trust receipt" was executed by Mark III on May 18, 1970, which document identified three of the four cars sold by Guy Martin Buick to Mark III as security for the loan, specified the terms of the loan agreement, and specified that the bank would hold a security interest in the three automobiles as collateral for the loan of $2,500. On May 25, 1970, Guy Martin Buick delivered the three certificates of title to the bank and, shortly thereafter, deposited Mark III's check in its own account. Subsequently, Mark III's check was returned for insufficient funds, and Guy Martin Buick immediately picked up the cars from Mark III's lot. Guy Martin Buick then demanded the certificates of title from the bank. The bank refused and demanded that Guy Martin Buick deliver the cars to the bank.
Guy Martin Buick initiated the present action for a mandatory injunction requiring Colorado Springs National Bank to deliver the title certificates. In addition, it requested compensatory damages, for depreciation of the cars during the time that the bank withheld the titles, and exemplary damages, together with interest and costs. The bank's answer denied that its refusal to surrender the certificates of title to Guy Martin Buick was wrongful. The bank then counterclaimed against plaintiff seeking a mandatory injunction requiring plaintiff to deliver the three automobiles and requesting damages for the alleged conversion of the automobiles in the amount of $2,500, plus interest. Thereafter, Guy Martin Buick applied for a preliminary mandatory injunction ordering the bank to surrender the certificates of title so that Guy Martin Buick might sell the cars in mitigation of damages. This motion was granted and the automobiles were sold.
Trial was to the court, which determined that Guy Martin Buick's interest as seller took priority over the bank's security interest. The court then ordered that Guy Martin Buick was entitled to retain the $1,850 proceeds received from sale of the three automobiles, denied the bank's counterclaim, and entered judgment accordingly. The bank appeals. We reverse.
The transaction between Guy Martin Buick and Mark III passed title to the automobiles from Guy Martin Buick to Mark III for a specified price. C.R.S. 1963, XXX-X-XXX. The automobiles were movable goods at the time of their identification to the contract for sale. C.R.S. 1963, XXX-X-XXX. The transaction was within the scope of the sales chapter of the Uniform Commercial Code. C.R.S.1963, XXX-X-XXX. There is no controversy concerning the fact that a sale occurred between Guy Martin Buick and Mark III, rather the crux of this dispute involves the determination of the priority of Guy Martin Buick's interest in the automobiles and the conflicting interest of the bank in the automobiles.
The extent of Guy Martin Buick's interest in the automobiles is dependent upon the effect of its sale of the three automobiles to Mark III. The sale was a cash transaction where payment was due and demanded upon delivery. C.R.S.1963, XXX-X-XXX. Mark III paid Guy Martin Buick, but since the payment was by a check, payment was conditional upon the check being honored at presentment. C.R.S.1963, XXX-X-XXX. Delivery of the automobiles was sufficient to pass title to Mark III in spite of the failure of Guy Martin Buick to provide the certificates of title to the automobiles. C.R.S.1963, XXX-X-XXX. Waggoner v. Wilson, Colo.App., 507 P.2d 482. When Guy Martin Buick presented Mark III's check, it was dishonored. At that point, Mark III no longer had the right to retain or dispose of the vehicles. C.R.S.1963, XXX-X-XXX. Guy Martin Buick, therefore, had the right to reclaim the vehicles, unless the bank had in the interim *914 gained a security interest in the automobiles superior to such right.
The "trust receipt" agreement executed between the bank and Mark III constituted an enforceable security agreement, C.R.S.1963, XXX-X-XXX, by which the bank gained a security interest in the automobiles which attached at the time of execution of the agreement and the advancement of funds. The automobiles were motor vehicles held for sale as inventory. C.R.S.1963, XXX-X-XXX. Therefore the provisions of the Certificate of Title Act concerning encumbrances on motor vehicles, 1967 Perm.Supp., C.R.S.1963, 13-6-19, and C.R.S.1963, 13-6-20, do not apply to the security interest of the bank, and the provisions of Article 9, Chapter 155, C.R.S.1963, do apply. 1967 Perm.Supp., C.R.S. 1963, 13-6-19. At the time the bank gave value to Mark III and the agreement was executed, Mark III had encumberable rights in the automobiles; hence, a security interest in favor of the bank attached to the automobiles, albeit unperfected by filing or otherwise. C.R.S.1963, XXX-X-XXX.
It is the policy of the Uniform Commercial Code that a security agreement shall be effective between the parties and against other parties except as specifically provided otherwise in the Code. C.R.S. 1963, XXX-X-XXX. The Code, C.R.S.1963, XXX-X-XXX, specifies which interests take priority over an unperfected security interest, and since Guy Martin Buick's interest or right in the automobiles does not fall within any of those specified interests, its right to reclaim the goods does not take priority over the bank's unperfected security interest. The bank therefore was entitled to recover as against Guy Martin Buick on its counterclaim.
Guy Martin Buick's remedy is an action against Mark III for the price of the delivered goods. C.R.S. 1963, XXX-X-XXX.
We reverse and remand with directions to reinstate the bank's counterclaim, to determine damages thereunder, and to enter judgment in accordance herewith.
PIERCE, J., concurs.
COYTE, J., dissents.
COYTE, Judge (dissenting):
I agree with the findings and conclusions of the trial court wherein it stated:
"No specific right is given by the U.C.C. to the seller to reclaim possession of goods delivered to the buyer by the payment by check, later dishonored. However, comment 3 to Section 155-2-507 suggests the seller's rights are the same as XXX-X-XXX. See Greater Louisville Auto Auction v. Ogle Buick, 387 S.W.2d 17 (Ky.) Section 155-2-702(2) (3) provides as follows:
`(2) Where the seller discovers that the buyer has received goods on credit while insolvent, he may reclaim the goods upon demand made within ten days after the receipt, . . ..
(3) The seller's right to reclaim under Subsection (2) of this section is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this article (Section 155-2-403). Successful reclamation of goods excludes all other remedies with respect to them.'
"It is clear that the giving of a check for the purchase price of goods is a representation in writing that the maker thereof is solvent and the check will be paid. Theo. Hamm Brewing Co. v. First Trust & Savings Bank of Kankakee (Ill.App.) [103 Ill.App.2d 190] 242 N.E. 2d 911. This court finds and concludes that plaintiff relied upon said check and further concludes that the plaintiff, as between itself and Mark III, had the right to reclaim the three automobiles and that there was no ten day limitation on its rights to do so. The title acquired *915 by Mark III was conditional and on dishonor of the check failed, leaving title in plaintiff. Compare [First State] Bank v. Kohl, 79 Colo. 620, 247 Pac. 571.
"However, the bank did not take into its possession the automobiles but left them with Mark III. It did not file a financing statement. Said Section 13-6-19(b) provides the U.C.C. applies to such a security interest and perfection thereof shall be made pursuant to the code. Section 155-9-302 provides that a financing statement must be filed to perfect all security interests. There are exceptions, none applicable here. Therefore, the court concludes the bank had an unperfected security interest in the three automobiles.
"6. Section 155-9-305 provides that a security interest in goods may be perfected by the secured party's taking possession of the collateral. The right of plaintiff to reclaim the automobiles grows out of the sale which included the requirement that the purchase price be paid upon delivery. Undoubtedly, this is a species of a security agreement created by contract, 155-9-102(2), and is an agreement as defined by Section 155-2-511(3), from which the right to reclaim is implied by law. The court concludes that plaintiff perfected its security interest by taking possession of the three automobiles. It follows that, even though the defendant were a good faith purchaser, the perfected security interest of plaintiff under the terms of the U.C.C. was and is prior and superior to that of the defendant. Section 155-9-312."
Accordingly, when plaintiff took possession of the automobiles, it perfected its security interest, which security interest was superior to the unperfected security interest of the bank. Additionally, the trial court found that the bank was not a good faith purchaser for value. I am of the opinion that the issue was properly decided by the trial court and I would affirm the decision of the trial court.